FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NEBRASKA DISTRICT COURT**

2026 APR -3 AM II: 14

OFFICE OF THE CLERK

---

**JEROMY WILSON,**

Plaintiff,

**vs.**

**DANESH NOSHIRVAN,**

Defendants.

**8:25-cv-00635**

---

**NON-PARTY JOSEPH ANTHONY CAMP'S EMERGENCY MOTION TO INTERVENE FOR LIMITED PURPOSE, TO ASSERT JUDGMENT-CREDITOR INTEREST, AND TO IMPOSE EQUITABLE LIEN UPON ANY MONETARY RECOVERY PAYABLE TO PLAINTIFF DANESH NOSHIRVAN**

Non-Party **Joseph Anthony Camp ("Movant")**, appearing pro se and as judgment creditor under a final judgment entered by a competent court in Colombia, respectfully moves this Court pursuant to **Fed. R. Civ. P. 24**, the Court's **inherent equitable authority**, and **Fed. R. Civ. P. 69**, for leave to intervene for the limited purpose of asserting a creditor's interest in any proceeds arising from the above-captioned action, and for entry of an order imposing an equitable lien upon any damages, settlement proceeds, fee awards, sanctions awards, registry funds, or any other monetary recovery payable to Plaintiff **Danesh Noshirvan**.

In support thereof, Movant states as follows:

# I. INTRODUCTION

This motion concerns the preservation and proper disbursement of any monetary proceeds that may become payable to Defendant **Danesh Noshirvan** in this action.

Movant holds a final judgment and active judicial relief proceedings in Colombia against Noshirvan, including a formally admitted tutela action naming Noshirvan as respondent.

Movant seeks narrowly tailored relief:

1. limited intervention;
2. recognition of Movant's creditor interest as to any funds disbursed through this Court or this litigation;
3. prevention of dissipation of such proceeds; and
4. priority application of any such proceeds toward satisfaction of the foreign judgment.

This motion does **not seek adjudication of unrelated assets**, but instead concerns a specific and direct interest in funds arising from litigation currently pending before this Court.

# II. FACTUAL BASIS

Defendant Danesh Noshirvan has purposefully and repeatedly availed himself or has been adjudicated sufficiently of the jurisdiction of the **District of NEBRASKA**.

The presently pending case, **8:25-cv-00635**, includes claims that may lead to settlement proceeds or a damages award.

Because any such proceeds arise directly from litigation pending before this Court, this Court has supervisory authority over their preservation and disbursement.

Separately, judicial proceedings in Bogotá, Colombia, have been initiated against Danesh Noshirvan and formally admitted by the competent court. A final decision has been rendered, and Noshirvan has judgement issued against him.

Noshirvan has been ordered to pay 2000 Salario Minimo Legal Mensual Vigente (2000 SMMLV) which is 3,501,810,000 Colombian Pesos (COP). At the current exchange rate between COP and USD the USD value is: $960,340.76.

The defamation and other conduct by Noshirvan which caused this damage award is laid out in the **ENGLISH TRANSLATED STATEMENT OF FACTS** from the Colombian case below the signature block of this document.

## III. BASIS FOR INTERVENTION

### A. Intervention as of Right / Permissive Intervention

Under **Fed. R. Civ. P. 24(a) and 24(b)**, intervention is appropriate where the movant claims an interest relating to the property or transaction that is the subject of the action.

Movant claims a direct and legally protectable interest in any monetary recovery payable to Defendant.

The "property" at issue is the chose in action and any proceeds derived therefrom.

Absent intervention, Movant's ability to protect his creditor rights may be impaired if funds are disbursed, transferred, concealed, or dissipated.

Because the relief sought is limited solely to the proceeds of this litigation, intervention will not unduly prejudice the parties.

## IV. EQUITABLE LIEN / CONSTRUCTIVE TRUST

This Court possesses inherent authority to preserve and control the disposition of proceeds arising from cases pending before it.

Accordingly, Movant respectfully requests that the Court impose an **equitable lien and/or constructive trust** upon:

- any settlement proceeds,
- any damages award,
- any sanctions award,
- any attorney's fee award payable to Defendant,
- any funds deposited into the Court registry, and
- any sums otherwise payable to Defendant through this litigation.

Such relief is necessary to prevent irreparable harm through dissipation of assets.

Because Defendant has voluntarily invoked this Court's jurisdiction for the purpose of obtaining monetary relief, equity strongly favors preservation of any such recovery pending satisfaction of outstanding judgment obligations.

## V. RULE 69 AND ENFORCEMENT PRINCIPLES

Pursuant to **Fed. R. Civ. P. 69(a)**, federal judgments and collection procedures may proceed in accordance with the law of the state in which the court sits.

4

To the extent Florida collection principles apply, Movant seeks creditor protection consistent with Florida enforcement and lien procedures.

This Court may therefore preserve funds pending recognition and enforcement proceedings.

## VI. REQUEST FOR RELIEF

**WHEREFORE**, Movant respectfully requests that this Court:

1. **GRANT limited intervention** for the purpose of asserting creditor rights;
2. **IMPOSE an equitable lien** upon any monetary proceeds payable to Defendant Danesh Noshirvan in this action;
3. **ORDER that no funds be disbursed** without prior notice to Movant;
4. **DIRECT that any monetary recovery be first applied** toward satisfaction of Movant's foreign judgment upon recognition; and
5. grant such further relief as justice requires.

Respectfully submitted,

/s/ Joseph A. Camp   04/03/2026
Joseph A. Camp
5514 Lewiston Street
Denver, Colorado 80239
+1 720 454 5240

### ENGLISH TRANSLATION STATEMENT OF FACTS

*1. I am a U.S. citizen and legally reside in Bogotá D.C., Republic of Colombia, where I conduct my personal and professional life. In accordance with Article 100 of the Political Constitution, foreigners in Colombia enjoy the same civil rights and guarantees granted to nationals, including the protection of fundamental rights through the writ of amparo (tutela). Consequently, as a resident in Colombian*

territory, I am entitled to invoke the comprehensive protection of my fundamental rights to a good name, honor, privacy, and human dignity, enshrined in Articles 1, 15, and 21 of the Political Constitution.

2. Mr. Danesh Noshirvan is a U.S. citizen who operates digital platforms with massive reach under the usernames "thatdaneshguy" (Instagram, verified account with a blue badge) and "ThatDanesh" (Substack), among other profiles on various social media networks. He has a significant number of followers, a circumstance that considerably amplifies the reach and magnitude of the harm resulting from his posts.

3. The defendant has waged a systematic, deliberate, and continuous campaign of defamation, slander, libel, and digital harassment against me, using multiple digital platforms with international reach. Through this campaign, he has publicly accused me of committing serious crimes, made derogatory remarks about me, and disclosed my personal data without authorization, all with the clear purpose of destroying my honor, my good name, and my human dignity.

4. On his verified Instagram account (@thatdaneshguy), the defendant posted a video and accompanying text in which he makes the following false and seriously damaging statements against me:

a) He calls me "Child stalker Joey Camp," publicly accusing me of being a child predator, an accusation that constitutes an extremely serious crime and lacks any evidentiary basis.

b) He claims that I am "apparently a registered sex offender according to Belizean media," falsely accusing me of committing sexual offenses without providing any verifiable evidence.

c) He labels me as "a white supremacist who targets women and children with sexual assault for a fee," accusing me of committing multiple sexual offenses against minors.

d) He refers to me as a "Real Rapist," that is, he publicly accuses me of being a rapist.

e) He states that I "cannot leave Colombia," falsely suggesting that I am under judicial or mobility restrictions, creating the public impression that I am a fugitive from justice.

6

f) He mentions that "@bullyville has some plans for him there anyway," constituting a veiled threat by implying that third parties have "plans" for me in Colombia.

g) He uses the expression "looking like Trevor from GTA 5" to ridicule and denigrate my physical appearance before his massive audience.

5. This Instagram post received over 21,100 likes, demonstrating the massive reach of the defamation and the exponential magnitude of the damage caused to my honor, good name, and dignity, both in Colombia and internationally. The content remains published and accessible to anyone in the world with an internet connection, including residents of Colombia, perpetuating the damage indefinitely.

6. Additionally, the defendant maintains an active page on the Substack platform under the profile "Danesh," where he publishes articles and multimedia content with systematic accusations against me. This page contains numerous posts with defamatory statements, accusations of criminal conduct without any supporting evidence, and content designed to destroy my reputation. The ongoing and cumulative nature of these posts continuously exacerbates the damage.

7. On November 18, 2025, the defendant sent an email to the Colombian National Police – CAI Virtual (addresses: cai.virtual@policia.gov.co and caivirtual@policia.gov.co), filing a complaint against me in which he accuses me of committing multiple crimes, including threats, harassment, unlawful coercion, violation of personal data, unauthorized access to a computer system, identity theft in digital media, and even child pornography (Art. 218 of the Colombian Penal Code), one of the most serious crimes under the Colombian penal code. This false accusation, made before a public authority, seeks to generate the most severe consequences possible and constitutes an act of instrumentalizing the Colombian state apparatus as a mechanism for transnational harassment.

8. It should be noted that the defendant copied me (CC) on the email addressed to the National Police, including my email address joey@joeycamp2020.com as a recipient. This demonstrates that the purpose of the communication was not only to inform the authorities of alleged events, but also to directly intimidate me, letting me know that I was being accused of serious crimes before the authorities of the country where I reside.

7

*9. The defendant has disclosed my personal data without authorization, including my geographic location in Colombia, my legal status, my email address, and other sensitive data, with the purpose of publicly exposing me and facilitating acts of harassment by third parties. This practice seriously violates my right to privacy and the protection of personal data.*

*10. The defendant's conduct has been disseminated in publications that include expressions suggesting or normalizing that something might happen to me, and even celebratory expressions have been made regarding the possibility of harm to my safety, which increases my fear and the risk of attacks by third parties. 11. As a result of the defendant's systematic campaign, I have suffered serious damage to my honor and reputation, harm to my personal, family, and professional relationships, an objective increase in the risk to my personal safety, and severe moral and psychological damage. The massive public defamation has stigmatized me as a sex offender, racial supremacist, and rapist in the eyes of thousands of people, causing me reputational damage that is difficult to repair.*

*12. The seriousness and systematic nature of the digital persecution carried out by the defendant and by third parties motivated by his publications reached such magnitude that, on October 16, 2025, I found it necessary to submit a formal request to the Ministry of Foreign Affairs of Colombia for recognition of refugee status, in accordance with the provisions of Law 2136 of 2021 (Comprehensive Statute of Migration Policy), Decree 1067 of 2015 (Single Regulatory Decree of the Administrative Sector of Foreign Affairs, Title 3, Chapter 1) and the Convention relating to the Status of Refugees of 1951, citing as grounds the acts of persecution, harassment and systematic threats of which I have been a victim, which make my return to the country of origin unsustainable under safe conditions.*

*13. The defamatory posts remain active and accessible on the Instagram and Substack platforms, which means that the violation of my fundamental rights is ongoing, continuous, and increasing, and that the harm deepens with each new view, interaction, or reproduction by third parties.*

*14. I have filed a criminal complaint with the Attorney General's Office for the crimes of slander, libel, threats, harassment, unlawful coercion, violation of personal data, false accusation, and conspiracy to commit a crime, registered under the unique criminal complaint number (NUCN) 110016000050242342331, which was assigned to the 588th Local Prosecutor's Office in Bogotá, D.C. However, the ordinary criminal justice system does not offer the immediacy*

8

required to protect my fundamental rights, given that the posts remain active and the harm deepens with each passing day.

15. On March 11, 2026, I used the reporting channels provided by the digital platforms to request the removal of the defendant's defamatory posts. Despite this, the harmful posts remain on both Instagram and Substack, confirming the ineffectiveness of private complaint mechanisms and the need for judicial intervention.

16. I have no other suitable and effective legal recourse to obtain immediate protection of my fundamental rights to honor, reputation, and human dignity against the defendant's conduct, who operates from abroad and uses global digital platforms to perpetrate the violations described. This tutela action is filed as a temporary measure to prevent irreparable harm, given that the damage to my honor and reputation increases irreversibly with each passing day that the posts remain active.

17. The tutela action is appropriate against the defendant because a situation of defenselessness has been established. The plaintiff lacks the real power to neutralize the reach of the challenged publications on their own, given that the defendant directly controls the profiles, accounts, and digital spaces from which the harmful content is disseminated, has a massive audience, and possesses a far greater amplification capacity than the affected party. Constitutional jurisprudence has explained that defenselessness arises, among other instances, when the affected person is in a de facto position of powerlessness in the face of high-impact publications on social media, since the sender retains control over the content and its persistence in the digital public sphere.

9