FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2026 APR 15 PM 3: 38

OFFICE OF THE CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

JEROMY WILSON,
  *Plaintiff,*

Case No. 8:25-cv-00635-JMG-JMD

v.

DANESH NOSHIRVAN; CHELSEA SUAREZ;
TABLE ROCK MANAGEMENT, LLC,

  *Defendants.*

## PLAINTIFF'S SECOND AMENDED COMPLAINT
## (JURY TRIAL DEMANDED)

### I. INTRODUCTION

Plaintiff Jeromy Wilson brings this action against Defendants Danesh Noshirvan, Chelsea Suarez, and Table Rock Management, LLC for defamation per se, false light invasion of privacy, intentional infliction of emotional distress, civil conspiracy, and injunctive relief. The claims arise from a sustained, multi-platform, monetized campaign of provably false statements published to an audience exceeding 210,000 direct views, with documented third-party amplification generating over 880,000 combined views.

Plaintiff does not dispute his sex offender registry status or his two prior Nebraska convictions. What Plaintiff challenges are specific, materially false statements that exceed his actual history: a fabricated third conviction drawn from dismissed Iowa charges; fabricated permanent legal restrictions that expired in 2011; false allegations of crimes for which Plaintiff was never charged; deliberate cropping of a legal document to manufacture a false impression; a clinically false diagnostic label published as fact; calculated interference with custody proceedings involving his minor daughter; and an independent false allegation of criminal solicitation of a minor published by Defendant Suarez without a single source.

Defendant Noshirvan operates a commercial content model built on targeting individuals under the guise of public accountability. He selects targets, frames them as threats deserving community action, monetizes every publication, and directs his audience — knowing they will harass, threaten, dox, and harm those he targets. He publishes false statements protected by careful framing as opinion, then profits while his audience does the damage he intended. When served with federal litigation, he did not stop. He escalated. That pattern of conduct — willful, financially motivated, and deliberately harmful — drives every claim in this action.

### II. PARTIES

1. Plaintiff Jeromy Wilson is an individual residing at 4213 Corby Street, Omaha, Nebraska 68111. Plaintiff has sole legal and physical custody of his minor daughter A.D.W. and is a registered sex offender in the State of Nebraska with two prior convictions.

2. Defendant Danesh Noshirvan is an individual residing at 2411 Charleston Road, Mansfield, Tioga County, Pennsylvania. Defendant operates the TikTok account "ThatDaneshGuy" with over 2,000,000 followers and related monetized accounts on YouTube, Facebook, Instagram, and Threads. Defendant generates advertising revenue, Super Thanks payments, and paid membership subscription income from his publications. All publications relevant to this action were cross-posted across all platforms.

3. Defendant Chelsea Suarez, known online as CC Suarez (@IAMCCSuarez), is an individual residing at 4502 S. Gaines Road, Tampa, Florida 33611. Suarez is a professional content

created with approximately 217,000 YouTube subscribers who generated advertising revenue and commercial sponsorship income from monetized video content. At all times relevant, Suarez was represented by and operating under a talent management relationship with Defendant Table Rock Management, LLC.

4. Defendant Table Rock Management, LLC is a California Limited Liability Company (Entity No. 201625910183), formed September 9, 2016, in active good standing. Its principal address is 5291 California Avenue, Suite 350, Irvine, CA 92617. Its registered agent for service is Corporation Service Company d/b/a CSC — Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, CA 95833. Table Rock's management contact email — contact@tablerock.com — is publicly listed in the descriptions of both of Suarez's defamatory videos. At all times relevant, Table Rock served as Suarez's talent management representative, managing her commercial content operations including the monetized publications at issue. See Exhibit H (California Secretary of State Bizfile Entity Record).

### III. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a Nebraska resident. Defendant Noshirvan is a Pennsylvania resident. Defendant Suarez is a Florida resident. Defendant Table Rock Management, LLC is a California entity. Complete diversity exists. The amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendant Noshirvan because he expressly geotagged multiple publications to Omaha, Nebraska, targeting a known Nebraska resident, causing harm felt entirely in this District.

7. This Court has personal jurisdiction over Defendant Suarez under Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, and the Due Process Clause. Under Calder v. Jones, 465 U.S. 783 (1984), personal jurisdiction is proper where a defendant's intentional tortious acts are expressly aimed at the forum state and the defendant knows the brunt of the injury will be felt there. Suarez contacted Plaintiff at his personal accounts on January 26, 2026. Her videos named Plaintiff by name, identity, and Nebraska location. She coordinated with Noshirvan, who expressly geotagged publications to Omaha, Nebraska. All harm was felt entirely in Nebraska.

8. This Court has personal jurisdiction over Defendant Table Rock Management, LLC because Table Rock, acting as Suarez's commercial representative, participated in and derived commercial benefit from tortious conduct expressly aimed at a Nebraska resident, and managed commercial content operations that directed harm into Nebraska.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides here, the conduct was targeted at and caused harm in this District, and Defendant Noshirvan expressly geotagged multiple publications to Omaha, Nebraska.

### IV. FACTUAL BACKGROUND

#### A. Plaintiff's Background and Conceded History

10. Plaintiff is a registered sex offender in Nebraska with two prior sex offense convictions — not three as Defendant Noshirvan repeatedly published. Plaintiff does not dispute his registry status or his two convictions.

11. The Nebraska Sex Offender Registry expressly states that registry information "shall not be used to retaliate against the registrants, their families, or their employers in any way" and that "[v]andalism, verbal or written threats of harm are illegal and will result in arrest and prosecution." Despite documented threats, doxxing, and sustained harassment directed at Plaintiff, no criminal prosecution has been initiated against any Defendant or network member, making civil and injunctive relief the only available remedies.

12. Plaintiff has never been convicted of, charged with, or judicially found to have committed: fraud, scamming, filing false police reports, child endangerment, grooming, or any

court, no child protective services agency, no law enforcement agency, and no government body has ever made a finding of child endangerment against Plaintiff. Defendant Noshirvan has no personal knowledge of Plaintiff's relationship with his daughter — every characterization Noshirvan made about Plaintiff's conduct toward his child was derived solely from Plaintiff's public social media videos, without any court record, police report, CPS finding, or independent verification of any kind.

13. Plaintiff has maintained sole legal and physical custody of his minor daughter A.D.W. continuously since she was two months old. The daughter's mother has had no active parental role in the child's life. Plaintiff's uninterrupted court-awarded custody is itself a judicial finding of parental fitness that no social media publication can override.

14. In 2011, Plaintiff was subject to temporary pre-trial bail conditions, including restrictions on contact with women under 19 and on social media use. These were temporary bail conditions — not a sentence, not a permanent court order, and not currently in effect. Plaintiff has no present legal prohibition on contact with women under 19 or on social media use. See Exhibit B-1 (Complete Subsequent Order of Release from Custody).

15. Plaintiff and his minor daughter are the protected parties under Ex Parte Harassment Protection Order CI-25-8367 (Douglas County District Court), with Brandon Taylor as respondent, valid October 1, 2025 through October 1, 2026. See Exhibit D.

## B. Defendant Noshirvan's Commercial Model and Pattern of Targeting

16. Defendant Noshirvan operates a commercial content model built around targeting private individuals under the guise of public accountability. His model functions as follows: he selects a target; frames the target as a threat to the community deserving public action; publishes false or misleading characterizations designed to maximize outrage; monetizes every publication through advertising, Super Thanks viewer payments, and paid memberships; and relies on his audience — which he actively directs — to amplify, harass, threaten, and harm the target while he retains plausible deniability behind claims of protected opinion and journalism.

17. Defendant's financial model creates a direct commercial incentive to escalate targeting. More outrage generates more views. More views generate more advertising revenue. Viewer payments through the Super Thanks function rewarded Defendant financially during the active targeting of Plaintiff. Paid memberships gave subscribers exclusive access to Plaintiff-targeting content. Every escalation of the campaign directly increased Defendant's revenue. Defendant is not an accountability journalist. He is a commercial operator whose product is the destruction of private individuals' reputations for profit.

18. Defendant deliberately frames provably false statements as opinion or rhetorical characterization to exploit First Amendment protections while publishing content he knows will cause maximum harm. This tactic — publishing false facts through the veneer of commentary — does not immunize false statements of fact. Under Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990), a statement framed as opinion is not protected if it implies the existence of undisclosed defamatory facts or states a claim that is provably true or false. "3x sex offender" is a numerical factual claim. "Pedophile" is a clinical diagnostic term. "Isn't supposed to have contact with any woman under 19" is a present-tense legal assertion. Each is provably false. None is protected opinion.

## C. Origin of the Campaign — Brandon Taylor's Recruitment of Noshirvan

19. Brandon Taylor, operating under TikTok handle @imnotbeezy ("VOICE OF THE VOICELESS BEEZY"), began publishing content targeting Plaintiff in late September 2025. Plaintiff obtained Ex Parte Harassment Protection Order CI-25-8367 against Brandon Taylor on October 1, 2025. Following issuance of the protection order, Taylor sought external amplification for his campaign against Plaintiff. Defendant Noshirvan was recruited into the campaign as a result of that outreach, as evidenced by Noshirvan's October 30, 2025 publication — "Let's help Brandon against Jeromy Ray Wilson" — published 29 days after the protection order took effect, expressly on behalf of and in support of Plaintiff's protection order respondent.

20. Brandon Taylor's direct connection to Noshirvan's campaign is documented through Noshirvan's own publications. Noshirvan's October 30, 2025 Facebook post — "Let's help Brandon against Jeromy Ray Wilson — in Omaha, NE" — garnered 710 reactions, 18 comments, and 27 shares, demonstrating that Noshirvan actively leveraged his two-million-follower platform to assist the individual subject to Plaintiff's active protection order. This publication was not coincidental — it was a deliberate act of coordination with Taylor, directed at Plaintiff, within 29 days of the protection order's issuance.

## D. The Nine Primary Video Publications

21. Beginning October 25, 2025, Defendant Noshirvan published at least nine monetized primary video publications targeting Plaintiff, with cumulative direct views of 210,217:

(a) October 25, 2025 — "A Popular TikTok Account is NOT Who They Say They Are" — 32,000 views — monetized, cross-posted to TikTok, YouTube, Instagram, and Facebook.

(b) October 29, 2025 — "Exclusive: TikToker with 100k Followers is a 3x Sex Offender @superdadadvocate" — 66,000 views — monetized. Contains the deliberately cropped bail document display at timestamp 14:20. See Section V.A and Exhibits B-1 and B-2.

(c) October 29, 2025 — "Jeromy Ray Wilson RESPONDS! I'm ready when h..." — 32,000 views — monetized, cross-posted.

(d) October 30, 2025 — "Let's help Brandon against Jeromy Ray Wilson" — 24,000 views — monetized. Published in direct support of Plaintiff's protection order respondent Brandon Taylor, 29 days after the protection order took effect.

(e) November 4, 2025 — "Jeromy Ray Wilson is STANDING UP against hate! @superdadadvocate (sitting)" — 13,217 views — monetized.

(f) November 10, 2025 — "A 3x CONVICTED PEDOPHILE tried to get a RESTRAINING ORDER against me!" — 14,536 views — monetized.

(g) November 11, 2025 — "Another PDFile living with Jeromy Ray Wilson and his DAUGHTER" — 30,177 views — monetized.

(h) January 22, 2026 — "He tried to SUE ME" — members-only paywalled content — full contents require formal discovery.

(i) January 22, 2026 — YouTube repost of TikTok Live broadcast. At timestamp 4:03, Defendant stated on camera: "I'm just gonna tell everybody to make their own videos about Jeremy Wilson the pedophile." This was a direct, on-camera instruction to Defendant's audience to generate additional targeted content about Plaintiff — issued after this lawsuit was filed.

## E. Independent Facebook Publications

22. In addition to the nine primary video publications, Defendant published multiple written and video posts on Facebook, each geotagged to Omaha, Nebraska and each independently monetized through Facebook's engagement and advertising systems:

(a) October 29, 2025: "Jeromy Ray Wilson the tiktok pedo responds to my video before he's banned! — in Omaha, NE." 2,400 reactions, 128 comments, 49 shares.

(b) October 29, 2025: "Update: Jeromy Ray Wilson is now voiceless." 637 reactions, 42 comments, 6 shares.

(c) October 30, 2025: "Let's help Brandon against Jeromy Ray Wilson — in Omaha, NE." 710 reactions, 18 comments, 27 shares. Published in direct support of Plaintiff's protection order respondent.

(d) November 11, 2025: "WHY ARE 2 PEDOS IN CHARGE OF A DISABLED NONVERBAL AUTISTIC CHILD NO WONDER HE IS DESPERATE TO SILENCE PEOPLE! That poor baby doesn't stand a chance." Body text: "I really hope the mom wins her custody battle." 4,500 reactions, 149 comments, 356 shares. Defendant had no personal knowledge of Plaintiff's relationship with his daughter. Every characterization in this post was derived solely from Plaintiff's public social media content. No court, agency, or authority has ever found Plaintiff to be a danger to his child.

### F. Plaintiff's January 25, 2026 Legal Notice to Defendant Noshirvan

23. On January 25, 2026 — before Defendant had retained counsel — Plaintiff sent a written legal notice and demand for retraction, removal, and evidence preservation directly to Defendant Noshirvan's personal email address, with delivery confirmation. See Exhibit J. The notice identified each specific false statement and placed Defendant on formal written notice of his evidence preservation obligations. Every publication by Defendant Noshirvan after January 25, 2026 was made with actual written notice of Plaintiff's specific falsity claims.

### G. Defendant Noshirvan's Deliberate Instigation of Audience Conduct

24. Defendant Noshirvan did not merely publish false content — he actively directed his audience to take action against Plaintiff. Under Restatement (Second) of Torts § 876, a defendant is liable for harm done by a third party where the defendant induced the third party to act or gave substantial assistance knowing the third party's conduct was tortious. Nebraska has adopted § 876. See Zimmerman v. FirsTier Bank, 255 Neb. 410 (1998).

25. Defendant's on-camera instruction at Video 9, timestamp 4:03 — "I'm just gonna tell everybody to make their own videos about Jeremy Wilson the pedophile" — is a direct, explicit direction to his two-million-follower audience to generate additional targeted defamatory content about Plaintiff. This instruction was issued after this lawsuit was filed. It is not rhetorical. It is not protected opinion. It is an on-camera call to action that foreseeably caused the documented amplification network to generate over 670,000 additional views of false content targeting Plaintiff.

26. Defendant further had actual knowledge of the following harmful content in his own monetized comment section and failed to remove it: (a) viewer @beavergunsnroses3258 posted Plaintiff's full home address — 4213 Corby Street, Omaha — followed by "I've got some PTO to use," constituting an implied physical threat; and (b) a viewer posted a Spokeo link directing viewers to Plaintiff's address. Both remained visible while Defendant continued to monetize the content. A content creator who profits from an audience, directs that audience's behavior, and allows documented threats and doxxing to remain in his monetized comment section after actual notice is not a passive platform — he is an active participant in the harm. Under Restatement (Second) of Torts § 315 and § 319, a party who has a special relationship with a third person and knows that third person is likely to cause harm has a duty to exercise reasonable care to prevent that harm. Defendant's commercial relationship with his audience — directing them on camera, monetizing their engagement, accepting their Super Thanks payments — is not passive hosting. It is a managed commercial relationship that creates a duty of care.

### H. Defendant Noshirvan's Direct Solicitation of Plaintiff's Custody Adversary

27. In the comment section of the October 29, 2025 YouTube video, @Msangelica4444 — the mother of Plaintiff's minor daughter — posted: "thanks for proving that he already is at fault for the social media because that is how we met. Via Facebook. He did ask for my ID though." Defendant personally replied in an edited comment: "You saw my video! If there's anything we can do to support you please let me know." Defendant personally identified and directly solicited the mother of Plaintiff's daughter — a party adverse to

28. At Video 2, timestamp 35:20, Defendant stated on camera: "I put this video together, nice and neatly because I hope your ex sees it. I hope she does take it to court." Defendant's November 11, 2025 Facebook post further expressed hope that Plaintiff's custody opponent wins her custody battle. This documented pattern — on-camera statements, direct comment section solicitation, and public endorsement of the custody opponent — establishes that Defendant deliberately weaponized his publications against Plaintiff in custody proceedings involving a child who is herself a named protected party under the active protection order.

## I. Coordination With and Publications by Defendant Suarez

29. On approximately January 22, 2026 — after this lawsuit was filed and after the coordination exchange in Noshirvan's YouTube comment section — Defendant Suarez sent Plaintiff a direct email notifying him that she intended to make videos about him. See Exhibit I. This email establishes that Suarez had decided to publish before she ever contacted Plaintiff for comment. Her subsequent pre-publication inquiry framed as journalism was pretextual.

30. On approximately January 23, 2026 — after this lawsuit was filed — Suarez publicly posted in Noshirvan's YouTube comment section: "Danesh I emailed you. I'm tapping in." Noshirvan publicly replied, exchanging contact information. This exchange, documented in Exhibit C(d), constitutes a pre-publication coordination agreement between Noshirvan and Suarez in Noshirvan's own public comment section, after this lawsuit was filed. The coordination is directly traceable to Noshirvan — it occurred on his platform, in his comment section, in direct response to his campaign.

31. On January 26, 2026, Suarez sent Plaintiff a pre-publication TikTok direct message and email, identifying herself as a "content creator and independent journalist" and framing Noshirvan's false characterizations as asserted facts requiring comment. See Exhibits K and L.

32. On January 27, 2026, Plaintiff responded in writing, expressly: (a) notifying Suarez of active federal and state litigation; (b) categorically denying all allegations; (c) warning of legal action if she published inaccurate or misleading material; (d) requesting she refrain from involving his minor child; and (e) serving a written anti-spoliation demand. See Exhibit L. Suarez received this warning before she published a single word.

33. On January 30, 2026 — three days after receiving Plaintiff's written warning — Suarez published a monetized YouTube video titled "TikToker SuperDadOfficial EXPOSED AND BANNED for being a S3X OFFENDER," accumulating 103,334 views and 5,600 likes. The video was sponsored by Aura (advertised as "Aura.com slash CC Suarez"), confirming commercial monetization beyond advertising revenue. The description explicitly tagged Noshirvan's YouTube channel and specific video about Plaintiff, directly linking the publication to Noshirvan as the originating source. Noshirvan personally appeared on camera in this video as an interviewee. During the interview, Noshirvan stated he was "not worried" about the lawsuit and had been "speaking accurately" — an on-camera acknowledgment of his awareness of the truth or falsity of his statements, made with full knowledge of this pending litigation, published to Suarez's 217,000 subscribers. In the same video, Suarez read Plaintiff's January 27, 2026 warning letter aloud in its entirety on camera and then mocked it — establishing beyond any conceivable dispute that she had actual knowledge of Plaintiff's specific falsity claims before publishing. Suarez also characterized Plaintiff as having been "illegally DJing at people's schools under a different name so the school doesn't know that you're a child predator" — a false factual assertion of criminal conduct with no court record, police report, or documentary basis of any kind. Suarez additionally created and promoted a GoFundMe fundraiser for Brandon Taylor — Plaintiff's protection order respondent — linking it in the video description alongside Taylor's TikTok and Megan Renee Beck's content, directly connecting Suarez's publication to the Brandon Taylor network that Noshirvan had already amplified on October 30, 2025.

34. On February 6, 2026, Suarez published a second monetized YouTube video titled "TikTok 'SuperDad' PEDO Jeromy Wilson JUST GOT WORSE," accumulating 50,632 views.

The description explicitly tagged Noshirvan's YouTube video about Plaintiff. In this video, Suarez published a new, independent false allegation originating with Suarez alone: that Plaintiff had contacted an anonymous young woman on Snapchat, offered to be her "sugar daddy," and to "pay her for sex," describing the alleged recipient as someone who "looks like she's 16." Suarez based this allegation solely on an unverified, anonymous *direct message she received* — *no police report, no court record, no corroboration of any kind.* This allegation was published one week after Suarez read aloud and mocked Plaintiff's categorical written denial on camera. The Snapchat allegation imputes criminal solicitation of a minor and was published with actual malice.

35. On February 18, 2026 — after this lawsuit was filed — Suarez published a third monetized YouTube video titled "TikTok's Super Dad Official Gets Much Worse | Jeromy Wilson." See Exhibit G. On the same date, Noshirvan posted on his YouTube channel: "Update on Jeromy Wilson by our friend @IAMCCSuarez," promoting Suarez's video and generating an additional 25,000 documented views. This coordinated same-day publication by both Noshirvan and Suarez — after multiple written legal notices, after service of federal litigation, and after mandatory CPS intervention involving Plaintiff's minor daughter — demonstrates that neither defendant was deterred by this action and that the civil conspiracy was ongoing.

## J. Table Rock Management's Role

36. Table Rock Management's management contact email — contact@tablerock.com — is publicly listed in the descriptions of both of Suarez's defamatory videos as the point of contact for "Management/PR Inquiries," establishing that Table Rock was publicly and commercially associated with both publications. See Exhibit H. Table Rock managed Suarez's commercial content relationships, including the branded sponsorship deal with *Aura appearing in the January 30 video, and derived financial benefit from the monetized* publications. Table Rock received Plaintiff's litigation hold notice during the pendency of this action, placing it on formal actual notice of the litigation and its preservation obligations.

## K. The Broader Third-Party Amplification Network — All Traceable to Noshirvan

37. Defendant Noshirvan's campaign generated a documented amplification network generating over 670,000 additional views beyond Defendant's own 210,217 direct views. Each network member's connection to Noshirvan is independently documented:

(a) Megan Renee Beck (@megan_renee215) — 178,200 TikTok followers — created a dedicated 9-video "Super Dad" play list about Plaintiff with over 460,000 documented views. Beck's content directly references and amplifies Noshirvan's characterizations, including the false "3x" conviction count.

(b) Anthony Blackwell (@anthonyblackwell0) — 483,600 TikTok followers — created a dedicated "P3do Jeromy" playlist and published a video directing his audience to "take care of" Plaintiff's new TikTok account. Blackwell's content is directly traceable to Noshirvan's campaign and adopts Noshirvan's false "3x convicted SA offender" characterization. This coordinated mass account-targeting resulted in the destruction of Plaintiff's TikTok account (135,200 followers, 2.5 million likes).

(c) Shannon Groover (@shannonlynne94) — published multiple TikTok videos traceable to Noshirvan: a January 13, 2026 post directly tagging Defendant Noshirvan by name; a January 17, 2026 post with Noshirvan's YouTube video visibly embedded and playing on screen; an approximately January 31, 2026 post receiving 8,446 likes, 192 comments, and 424 saves, simultaneously tagging every major amplification creator in the network; and a February 19, 2026 post making the new independent false Snapchat allegation while directing viewers to Megan Renee Beck and Chelsea Suarez. Groover's content is directly linked to Noshirvan through the on-screen embedding of his video and the direct tag of his name.

(d) Holley Stevenson (@holley.stevenson) — 41,000 Facebook followers — published

reactions and 38 shares on a single post. The comment section of a Groover video featuring Stevenson contains the explicit threat: "YOU are no longer safe Jeromy. THIRTEEN... she was THIRTEEN... YOU are not safe." Stevenson's content is part of the Groover-Noshirvan network chain.

    (e) Emily Doogan ("Critical True Crime") — published a YouTube Live video on November 15, 2025 titled "An Omaha Creep — Beezy and I discuss superdad while review Danesh's recent video," in which Brandon Taylor — Plaintiff's protection order respondent — appears on screen. The video description explicitly links to Noshirvan's content and to Brandon Taylor's TikTok, establishing three-way documented coordination between Noshirvan, Brandon Taylor, and Emily Doogan while the protection order against Taylor was active. Noshirvan's content is named in the video title and linked in the description — the connection is not inferred but documented.

    (f) Jamie Rich (@flawssee) — network member simultaneously tagged in Groover's January 31, 2026 coordinated network post.

## L. Government-Documented Harm — OPS Records and CPS Intervention

38. Defendant Noshirvan's publications directly caused mandatory government intervention involving Plaintiff's minor daughter. Following Defendant's publications, community members contacted Western Hills Elementary School — the school attended by Plaintiff's daughter A.D.W.. Those contacts triggered mandatory CPS reports documented in official OPS school records.

39. The Student Services Contact Log for Western Hills Elementary contains two entries directly attributable to Defendant's campaign: (a) November 3, 2025 — CPS Report #1151879, filed as a direct result of community members contacting OPS following Defendant's targeted publications; and (b) December 18, 2025 — continued government intervention arising from the same campaign. See Exhibit E (OPS Student Services Contact Log, Pages 27/30 and 29/30). These are official government records. They document the direct causal chain: Defendant published false targeted content → viewers were activated → community members contacted OPS → mandatory CPS reports were filed → government intervention was documented. Neither CPS contact resulted in a finding against Plaintiff. There is no substantiated finding of child endangerment against Plaintiff in any government record. The contacts were generated by Defendant's campaign — not by Plaintiff's conduct.

40. The campaign's harm extended directly to Plaintiff's daughter's Special Olympics participation. Prior to Defendant's October 29, 2025 viral publication, Plaintiff had been continuously involved in supporting A.D.W.'s Special Olympics participation for over one year, including direct coaching support. In the direct aftermath of Defendant's campaign — in immediate temporal proximity to the viral publications — Plaintiff's participation was restricted. This restriction occurred immediately before A.D.W.'s first tournament appearance. Her Special Olympics coach, Jason Troia, observed the full duration of Plaintiff's prior involvement, the restriction, and its effect on A.D.W.'s performance and engagement. *This constitutes a concrete, third-party-verified, documented harm caused directly and proximately by Defendant's campaign.*

## M. Ongoing Harm and Post-Filing Escalation

41. As a direct and foreseeable result of Defendants' publications and audience direction, Plaintiff has been subjected to daily harassing, threatening, and emotionally harmful communications across multiple platforms and via telephone voicemail, including direct threats of physical harm and messages urging Plaintiff to end his own life. Plaintiff has documented these communications and filed multiple police reports with the Omaha Police Department.

42. After this lawsuit was filed, Defendant Noshirvan continued publishing, recruited and personally appeared on camera with Suarez, directed his audience on camera to make additional videos targeting Plaintiff, and coordinated with Suarez on a third post-lawsuit

threat remain published in Defendant's monetized comment section. Defendant's post-filing escalation — with full knowledge of the CPS intervention involving Plaintiff's minor daughter, the Special Olympics restriction, the platform destruction, and the daily threats to Plaintiff's physical safety — demonstrates deliberate indifference to the harm caused and willful continuation of the campaign for financial gain.

## V. THE MATERIALLY FALSE STATEMENTS

### A. The Cropped Document — Deliberate Manufacture of a False Impression

43. The single most direct evidence of actual malice in this action is Defendant Noshirvan's deliberate alteration of the documentary evidence he used to support his campaign. In Video 2 at timestamp 14:20, Defendant displayed a cropped version of Plaintiff's 2011 Subsequent Order of Release from Custody. Defendant deliberately removed the document's header before displaying it. The video description stated in present tense: "Jeromy Wilson aka Superdad aka @voiceofthevoiceless2025 is a registered sex offender and isn't supposed to have contact with any woman under 19." This statement is false. No such current restriction exists.

44. Defendant possessed the complete, unaltered document. He knew what it said. He removed the header — an affirmative act requiring deliberate choice — because the header revealed that the restrictions were temporary 2011 pre-trial bail conditions, not permanent court orders. He then published a present-tense written statement describing expired bail conditions as current legal restrictions. He did this to 66,000 viewers. The complete document is attached as Exhibit B-1. The cropped version as displayed is attached as Exhibit B-2. The comparison between the two documents is itself proof of actual malice. A person who crops a document to remove the information that defeats his narrative, then publishes a false present-tense description based on the cropped version, does not have a reckless disregard for the truth. He has actual knowledge of it.

### B. False Characterization of Number of Convictions

45. Across at least four separate publications, Defendant Noshirvan repeatedly stated Plaintiff is a "3x" convicted sex offender. Plaintiff has two prior sex offense convictions in Nebraska. The "3x" characterization is a specific numerical factual claim — not opinion, not rhetorical flourish, not hyperbole. Numbers are either true or false. Two is not three. Defendant had direct access to the Nebraska public record showing two convictions. He published three anyway.

46. In his Answer to the First Amended Complaint (Doc. #32, ¶58) and proposed Amended Answer (Doc. #35-1, ¶58), Defendant affirmatively pleaded an Iowa charge as the basis for the "3x" characterization. Iowa Courts Online public record for Case No. 03971 JVJV013171 (Woodbury County) shows both Iowa charges carry adjudication status "DNU-DISMISSED" with no conviction, dated October 6, 2003. See Exhibit F. Defendant therefore either: (a) knew the Iowa charges were dismissed and published "3x" anyway — actual knowledge of falsity; or (b) never verified the Iowa record before publishing a specific numerical conviction claim about a dismissed case — reckless disregard for truth. Either satisfies actual malice. The difference between two convictions and three is not trivial — it is the manufactured predicate for the most severe and stigmatizing characterization in the campaign, and Defendant had the records to know it was false.

### C. False Allegation of History of Filing False Police Reports

47. In Video 6 at timestamp 2:25, Defendant stated: "Of course you have a history there in Omaha of filing false police reports." Plaintiff has no such history and has never been charged with filing a false police report.

### D. False Fraud and Scamming Allegations

48. In Video 2 at timestamp 24:44, Defendant stated: "Jeromy saw it as a way of getting money,

Plaintiff has never been charged with or convicted of fraud or any financial crime.

### E. False Assertions of Child Endangerment

49. In Video 7 at timestamp 0:57, Defendant stated: "you're putting children in danger." In Video 9 at timestamp 6:23, Defendant stated Plaintiff is "actively grooming on TikTok." These are statements of present-tense criminal conduct — not opinions derived from observation. Defendant had no personal knowledge of Plaintiff's conduct toward his daughter or any child. His only source was Plaintiff's public social media videos. No court has found Plaintiff unfit. No CPS investigation has resulted in a finding against Plaintiff. No law enforcement agency has charged Plaintiff with any offense involving his daughter or any child. Defendant's defense that these characterizations are "opinions derived from observations of Plaintiff's conduct" fails under Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990) — a statement implies provably false facts when it asserts criminal conduct (child endangerment, grooming) that either occurred or did not. No documentary evidence supports these assertions. They are false statements of fact, not protected opinion.

### F. False and Defamatory Use of the Term Pedophile

50. Defendant Noshirvan repeatedly labeled Plaintiff a "pedophile" across multiple publications as a statement of fact. Defendant has admitted in his Answer (Doc. #32, ¶32) to referring to Plaintiff as a pedophile. Pedophilia is not a legal or criminal term — it is a specific clinical diagnosis defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5, Diagnostic Criteria 302.2, F65.4). As recognized by the United States Sentencing Commission, a diagnosis of pedophilic disorder requires recurrent, intense sexually arousing fantasies, urges, or behaviors involving sexual activity with a prepubescent child, generally age 13 or younger. Plaintiff has never been diagnosed with pedophilic disorder. None of Plaintiff's convictions involve prepubescent children. Defendant's use of "pedophile" is not loose rhetoric — it is a deliberate clinical mischaracterization designed to place Plaintiff in the most stigmatized category of sex offense, one that does not correspond to Plaintiff's record. It is provably false.

51. Defendant Suarez adopted and republished the "pedophile" and "PEDO" characterizations in all three of her monetized publications, with actual knowledge of their disputed nature as established by Plaintiff's January 27, 2026 written warning she read aloud and mocked on camera.

### G. Suarez-Specific False Statements of Fact

52. In Video 1 (January 30, 2026), Suarez made the following independent false statements beyond those adopted from Noshirvan: (a) that Plaintiff was "illegally DJing at people's schools under a different name so the school doesn't know that you're a child predator" — a false assertion of criminal conduct with no court record, police report, or factual basis; and (b) repeated characterization of Plaintiff as a "child predator" as a statement of fact rather than protected opinion, published to 103,334 viewers.

53. In Video 2 (February 6, 2026), Suarez published the Snapchat solicitation allegation: that Plaintiff contacted an anonymous young woman on Snapchat, offered to be her "sugar daddy," and offered to "pay her for sex," with the alleged recipient described as someone who "looks like she's 16." This allegation was sourced solely from an unverified, anonymous direct message with no corroboration, police report, court record, or independent verification of any kind. It was published one week after Suarez publicly read and mocked Plaintiff's categorical written denial. It imputes criminal solicitation of a minor. It is false.

54. In Video 3 (February 18, 2026), Suarez continued her pattern of publishing false and defamatory content after receiving written legal notice, after service of federal litigation, and in coordinated same-day promotion with Noshirvan. See Exhibit G.

## VI. ACTUAL MALICE

55. Defendant Noshirvan's actual malice — knowledge of falsity or reckless disregard for truth — is established by the following independent grounds, each sufficient alone:

(a) Deliberate Cropping of Documentary Evidence. Defendant deliberately removed the header from the 2011 bail document before displaying it to 66,000 viewers, then published a present-tense written statement of restrictions he knew were expired. This is actual knowledge of falsity — not recklessness. See Section V.A.

(b) False Conviction Count Despite Possession of the Accurate Record. Defendant had direct access to the Nebraska public record showing two convictions. He published "3x" anyway, pleading a dismissed Iowa charge as justification — a charge Iowa Courts Online confirms was dismissed in 2003. He either knew it was dismissed or never checked before publishing a specific numerical claim. Either establishes malice.

(c) Receipt of Written Legal Notice Before Continued Publications. On January 25, 2026, Plaintiff delivered a written legal notice identifying each specific false statement, before Defendant had retained counsel. Every publication after January 25, 2026 was made with actual written notice of Plaintiff's falsity claims. See Exhibit J.

(d) On-Camera Direction to Generate Additional Defamatory Content After Lawsuit Filed. At Video 9, timestamp 4:03, after this lawsuit was filed, Defendant instructed his two-million-follower audience on camera: "I'm just gonna tell everybody to make their own videos about Jeremy Wilson the pedophile."

(e) Deliberate Solicitation of Plaintiff's Custody Adversary. Defendant personally reached out to Plaintiff's custody adversary in his own comment section, offering active assistance, while on camera expressing hope she would use his videos in court proceedings — demonstrating he knew the intended use of his false characterizations was to harm Plaintiff in custody proceedings.

(f) Selective Omission of Dismissal Status. Defendant selectively used public court records while omitting the dismissal status from dismissed charges — not an error of omission, but a deliberate choice to present a partial record as a complete one.

(g) Monetization During the Campaign. Defendant monetized every publication, accepted Super Thanks payments from viewers during the active targeting of Plaintiff, and operated a paid membership program with exclusive Plaintiff-targeting content — creating a direct financial incentive to sustain and escalate the campaign.

(h) Failure to Remove Doxxing and Threats After Notice. Defendant had actual knowledge of the home address post and the implied physical threat in his comment section and allowed both to remain while continuing to monetize the content.

(i) Post-Lawsuit Recruitment and Escalation. After being served with federal litigation, Defendant recruited Suarez, personally appeared on camera with her, and coordinated on a third post-lawsuit publication as recently as February 18, 2026.

(j) Knowledge of Harm to Minor Daughter. Defendant continued publishing and directing audience conduct after mandatory CPS intervention involving Plaintiff's minor daughter was a documented and foreseeable consequence of his campaign.

56. Defendant Suarez's actual malice is independently established by: (a) receipt of Plaintiff's January 22, 2026 email documenting her pre-decided publication intent, see Exhibit I; (b) sending Plaintiff a pre-publication TikTok DM on January 26, 2026 framing Noshirvan's false characterizations as asserted facts, see Exhibit K; (c) receiving Plaintiff's written pre-publication denial and legal warning on January 27, 2026, see Exhibit L; (d) publishing anyway three days later; (e) reading Plaintiff's written warning aloud on camera to 103,334 viewers and publicly mocking it — the most direct possible demonstration of actual knowledge of disputed falsity; (f) hosting Noshirvan on camera

while he stated he had been "speaking accurately" with full knowledge of the pending litigation; (g) publishing the false Snapchat allegation in Video 2 based solely on an anonymous unverified DM, one week after publicly mocking Plaintiff's categorical denial; (h) characterizing Plaintiff as illegally DJing at schools — a false criminal assertion with no documentary basis; (i) publishing a third post-lawsuit video on February 18, 2026 after receiving Plaintiff's anti-spoliation notice; and (j) commercially monetizing all three publications, including a branded sponsorship deal linked to her personal affiliate code.

57. Defendant Table Rock Management, LLC demonstrated knowledge of or reckless disregard for the tortious conduct by: (a) publicly listing its management contact in the descriptions of both defamatory videos, commercially associating itself with the publications; (b) receiving Plaintiff's litigation hold notice during the pendency of this action; and (c) continuing to commercially represent Suarez's content operations after receiving that notice.

## VII. CLAIMS FOR RELIEF

## COUNT I — DEFAMATION PER SE (Against All Defendants)

58. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

59. Defendant Noshirvan published false statements of fact to a combined direct audience exceeding 210,217 views. Each false statement identified in Section V independently imputes criminal conduct to Plaintiff, constitutes defamation per se under Nebraska law, and caused harm presumed as a matter of law.

60. Defendant Suarez published false statements of fact in three monetized YouTube videos, including the use of "PEDO" in video titles in connection with Plaintiff's full name, the Snapchat solicitation allegation, the illegal DJing allegation, and the republication of Noshirvan's false characterizations. The combined views of Suarez's videos exceed 153,966. Suarez acted with actual malice as established in Section VI.

61. Defendant Table Rock Management, LLC, as Suarez's management representative with commercial interests in the publications, is liable for Suarez's defamatory publications under theories of agency and respondeat superior to the extent established through discovery.

62. As a direct and proximate result, Plaintiff has suffered harm to his reputation, emotional distress, custodial interference, platform destruction, loss of livelihood, government intervention involving his minor daughter, restriction of his participation in his daughter's Special Olympics program, and ongoing reputational harm.

## COUNT II — FALSE LIGHT INVASION OF PRIVACY (Against All Defendants)

63. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

64. Defendants' publications placed Plaintiff before the public in a false light highly offensive to a reasonable person, including depicting Plaintiff as subject to current legal restrictions that do not exist, as an active threat to children, as a pedophile within the clinical meaning of that term, and as a fraudster and predator.

65. Defendants acted with knowledge of or reckless disregard for the falsity of the publicized matter. As to Suarez specifically, her knowledge is established by the written pre-publication warning she received, read aloud, and mocked on camera.

66. As a direct and proximate result, Plaintiff suffered the damages described herein.

## COUNT III — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against All Defendants)

67. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

68. Defendants' conduct was extreme and outrageous. Specific acts constituting extreme and outrageous conduct include: publishing false criminal accusations to hundreds of thousands of viewers; deliberately cropping documentary evidence to manufacture a false impression; facilitating disclosure of Plaintiff's home address to a hostile audience with an implied physical threat and then allowing that threat to remain while monetizing the content; on-camera direction to a two-million-follower audience to generate additional defamatory videos targeting Plaintiff; directly soliciting Plaintiff's custody adversary and offering active assistance; publishing false content deliberately designed to harm Plaintiff in active custody proceedings; causing mandatory CPS intervention documented in official OPS school records; restricting Plaintiff's participation in his minor daughter's Special Olympics program in direct temporal proximity to the viral campaign; recruiting Suarez and personally appearing on camera with her after this lawsuit was filed; and, as to Suarez specifically, explicitly referencing Plaintiff's minor daughter's disability in pre-publication outreach and then publishing after receiving Plaintiff's written request not to involve his child.

69. Defendants acted intentionally or with reckless disregard of the probability of causing severe emotional distress.

70. Plaintiff suffered severe emotional distress as a direct and proximate result, including fear for his and his daughter's physical safety, daily threatening communications, platform destruction, custodial interference, government intervention involving his minor daughter, and restriction of his involvement in his daughter's Special Olympics participation.

### COUNT IV — CIVIL CONSPIRACY (Against All Defendants)

71. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

72. Defendants Noshirvan and Suarez, and Table Rock Management, LLC, entered into an agreement, express or implied, to publish false statements about Plaintiff and to amplify those false statements through coordinated monetized content. The agreement is evidenced by: (a) Suarez's January 22, 2026 email to Plaintiff following her initial coordination with Noshirvan, see Exhibit I; (b) the January 23, 2026 coordination exchange in Noshirvan's public comment section, see Exhibit C(d); (c) Suarez's pre-publication outreach to Plaintiff framing Noshirvan's narrative, see Exhibits K and L; (d) Noshirvan's on-camera appearance as an interviewee in Suarez's January 30 video, with the description explicitly tagging Noshirvan's channel; (e) Noshirvan's February 18, 2026 same-day coordinated promotion of Suarez's third post-lawsuit video, see Exhibit G; (f) Suarez's GoFundMe for Plaintiff's protection order respondent, directly connecting Suarez to the Brandon Taylor network Noshirvan had already amplified; and (g) Table Rock's commercial management of Suarez's content operations, publicly associated with both defamatory publications.

73. Each Defendant is liable for the acts of co-conspirators in furtherance of the scheme, including the combined 880,000+ views generated by the coordinated campaign.

74. As a direct and proximate result, Plaintiff suffered the damages described herein.

### COUNT V — INSTIGATION AND NEGLIGENT FAILURE TO CONTROL (Against Defendant Noshirvan)

75. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

76. Under Restatement (Second) of Torts § 876, a defendant is liable for harm done by a third party where the defendant induced that party to act, or gave substantial assistance or encouragement knowing the third party's conduct was tortious. Nebraska has adopted § 876. See Zimmerman v. FirsTier Bank, 255 Neb. 410 (1998). Defendant Noshirvan's on-camera direction to his two-million-follower audience to "make their own videos about

documented instigation. The foreseeable result was amplification network content generating over 670,000 additional views of false, defamatory, and threatening material targeting Plaintiff. That result occurred.

77. Under Restatement (Second) of Torts §§ 315 and 319, a party who has a special relationship with a third person and knows that third person is likely to cause harm to another has a duty to exercise reasonable care to prevent that harm. Defendant's commercial relationship with his audience — directing them on camera, monetizing their engagement, accepting their Super Thanks payments, and operating a paid membership program — is not passive hosting. It is a managed commercial relationship that creates a duty to exercise reasonable care over foreseeable harmful audience conduct. Defendant had actual knowledge of the home address post and the implied physical threat in his comment section. He failed to remove them while continuing to monetize the content. That failure constitutes negligent breach of his duty of care.

78. As a direct and proximate result of Defendant Noshirvan's instigation and negligent failure to control, Plaintiff suffered the damages described herein, including the documented amplification network harm, platform destruction, threats to physical safety, and ongoing targeting.

### COUNT VI — INJUNCTIVE RELIEF (Against All Defendants)

79. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

80. Plaintiff has suffered and continues to suffer irreparable injury, including: daily threats of physical harm and messages urging Plaintiff to end his own life; publication of Plaintiff's home address with an implied physical threat; ongoing fear for the physical safety of Plaintiff and his minor daughter; destruction of Plaintiff's social media platform and livelihood; mandatory CPS intervention documented in official OPS school records; restriction of Plaintiff's participation in his minor daughter's Special Olympics program; and interference with Plaintiff's custodial relationship. These injuries are not compensable by monetary damages alone.

81. Remedies at law are inadequate. Defendant Noshirvan demonstrated through post-litigation conduct that the filing of this lawsuit has not deterred him — after service, he published additional content, recruited Suarez, directed his audience on camera to make additional videos targeting Plaintiff, and coordinated a third post-lawsuit publication on February 18, 2026. No damages award can undo the compounding reputational harm caused by continuous republication across multiple platforms.

82. The balance of hardships tips sharply in Plaintiff's favor. Defendants have no legitimate interest in continuing to publish provably false statements. The minimal burden of removing false content is vastly outweighed by the continuing threats to Plaintiff's safety, reputation, custodial stability, and livelihood.

83. The public interest would not be disserved by the requested injunction. The First Amendment does not protect provably false statements of fact published with actual malice.

84. Plaintiff seeks a preliminary and permanent injunction requiring Defendants to: (a) remove all identified publications containing the materially false statements described herein from all platforms; (b) cease publishing or republishing any statement that Plaintiff is a 3x convicted sex offender, that Plaintiff is currently prohibited from contacting women under 19 or using social media, that Plaintiff has a history of filing false police reports, that Plaintiff has been charged with fraud, or that Plaintiff is actively grooming children; (c) cease directing, encouraging, or coordinating with third parties to publish false statements about Plaintiff or to harass, threaten, or target Plaintiff; and (d) remove or cause to be removed any comments disclosing Plaintiff's home address or containing threats of physical harm directed at Plaintiff or his minor daughter.

### VIII. DAMAGES

85. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered:

(a) Severe and ongoing reputational harm caused by the clinically false labeling of Plaintiff as a pedophile — a specific DSM-5 diagnosis inapplicable to Plaintiff — published to over 210,000 direct viewers and amplified to over 670,000 additional viewers, for a combined audience exceeding 880,000 documented views.

(b) Permanent destruction of Plaintiff's TikTok account (135,200 followers, 2.5 million likes), banned as a direct result of coordinated mass reporting directed by Defendant Noshirvan and his audience on a platform that does not maintain a blanket ban on registered sex offenders.

(c) Termination of Plaintiff's Instagram account (over 20,000 followers) and Facebook account (over 30,000 followers).

(d) Ongoing harassment of Plaintiff's remaining YouTube account.

(e) Interference with Plaintiff's custodial relationship through Noshirvan's direct outreach to Plaintiff's custody adversary and deliberate weaponization of false publications in ongoing custody proceedings.

(f) Mandatory CPS intervention involving Plaintiff's minor daughter, documented in official OPS school records, caused directly and proximately by Defendant's targeted publications. See Exhibit E. Neither contact resulted in a finding against Plaintiff — both were generated by Defendant's activated audience, not by Plaintiff's conduct.

(g) Restriction of Plaintiff's participation in his minor daughter A.D.W.'s Special Olympics program in direct temporal proximity to Defendant's viral campaign, depriving A.D.W. of Plaintiff's consistent coaching support immediately before her first tournament appearance, as available to be testified to by her Special Olympics coach Jason Troia.

(h) Fear for the physical safety of Plaintiff and his minor daughter resulting from doxxing and physical threats published and allowed to remain in Defendants' content.

(i) Severe emotional distress including daily threatening communications across multiple platforms and via telephone voicemail, including messages urging Plaintiff to end his own life.

(j) Loss of livelihood as an advocacy content creator.

86. Punitive damages are warranted under Nebraska law because Defendants' conduct was willful, wanton, and malicious. Abel v. Conover, 170 Neb. 926 (1960). Defendant Noshirvan's commercial model rewards escalation — more targeting generates more revenue. He cropped documentary evidence knowing it contradicted his narrative. He published a false conviction count while possessing the record showing it was false. He accepted financial payments from viewers during the active targeting of Plaintiff. He directed his audience on camera to generate more defamatory content after being served with federal litigation. He continued after mandatory CPS intervention involving Plaintiff's minor daughter became a documented and foreseeable consequence of his campaign. He is not a journalist who made mistakes. He is a commercial operator who deliberately manufactured false impressions for profit and hid behind the First Amendment while his audience carried out the damage he intended. That conduct warrants punitive damages at the maximum level the evidence will support.

87. Plaintiff seeks: compensatory damages not less than $5,000,000, allocated across the documented harm categories set forth above; punitive damages not less than $10,000,000, reflecting a 2:1 ratio to compensatory damages and consistent with the constitutional guideposts established in BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003), warranted by the highest degree of reprehensibility established by Defendants' deliberate

alteration of documentary evidence, commercial profiteering throughout the campaign, continued escalation after CPS intervention involving Plaintiff's minor daughter, and a business model that financially rewards targeting private individuals with provably false statements; disgorgement of all profits derived from all identified publications in an amount not less than $50,000, representing a conservative floor based on documented *view counts, applicable CPM advertising rates, Super Thanks payments, membership* subscription revenue, and branded sponsorship income, with the full amount to be established through discovery of Defendants' actual revenue records; injunctive relief as described in Count VI; costs pursuant to 28 U.S.C. § 1920; and such other relief as the Court deems just and proper.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeromy Wilson respectfully requests that this Court enter judgment in his favor and against Defendants Danesh Noshirvan, Chelsea Suarez, and Table Rock Management, LLC, jointly and severally where applicable, as follows:

1. Compensatory damages not less than $5,000,000, reflecting the full scope of Plaintiff's reputational harm, emotional distress, custodial interference, platform destruction, loss of livelihood, government-documented harm to his minor daughter, and restriction of his participation in his daughter's Special Olympics program;

2. Punitive damages not less than $10,000,000, representing a 2:1 ratio to compensatory damages and consistent with the constitutional guideposts of BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003). The degree of reprehensibility here is among the highest cognizable: Defendant Noshirvan deliberately altered documentary evidence he *possessed and knew contradicted his narrative; published a false conviction count while* holding the accurate public record; commercially profited from every act of targeting through advertising, Super Thanks payments, and paid memberships; directed his two-million-follower audience on camera to generate additional defamatory content after being served with federal litigation; allowed doxxing and physical threats to remain in his monetized comment section; and continued the campaign after mandatory CPS intervention involving Plaintiff's minor daughter became a documented and foreseeable consequence. Defendant Suarez published three monetized videos after receiving written legal notice, read Plaintiff's warning letter aloud and mocked it on camera, and fabricated an independent criminal allegation from a single anonymous unverified source. These defendants operate commercial platforms with millions of combined followers. A *punitive award must be sufficient to deter, not merely to inconvenience;*

3. Disgorgement of all profits derived from all identified publications, in an amount not less than $50,000 as a conservative floor based on publicly documented view counts and applicable CPM advertising rates across YouTube, TikTok, Instagram, and Facebook, plus Super Thanks payments accepted during the campaign, paid membership subscription revenue from Plaintiff-targeting content, and Defendant Suarez's branded Aura sponsorship revenue generated from the January 30, 2026 video, with the full amount to be established through discovery of Defendants' actual revenue records, platform monetization data, and management fee arrangements;

4. Preliminary and permanent injunctive relief as set forth in Count VI;

5. Costs of suit pursuant to 28 U.S.C. § 1920; and

6. Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**Jeromy Wilson, Plaintiff Pro Se**
4213 Corby Street, Omaha, NE 68111
(402) 415-9016 | djjiik2015@gmail.com

Date: 4-15-26

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I filed the foregoing Second Amended Complaint with the Clerk of the United States District Court for the District of Nebraska via CM/ECF. Upon docketing, the Court's CM/ECF system will automatically transmit a Notice of Electronic Filing to all counsel of record, including:

> Taylor Wemhoff, Esq.
> Liberty Law Group, LLC
> 13321 California St., Ste. 300, Omaha, NE 68154
> taylor@libertylawgroup.com

Service on Defendants Chelsea Suarez and Table Rock Management, LLC is being effectuated pursuant to Plaintiff's pending Motion for Service by United States Marshals. Upon approval, service will be completed and proof of service filed in accordance with FRCP 4.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 4-15-26

Jeromy Wilson, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

JEROMY WILSON,                                    Case No. 8:25-cv-00635-JMG-JMD
   *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA
SUAREZ;
TABLE ROCK MANAGEMENT, LLC,

   *Defendants.*

# EXHIBIT B-1

## COMPLETE SUBSEQUENT ORDER OF RELEASE FROM CUSTODY

*2011 Bail Conditions Document — Unaltered, With Header Intact*

In Support of Plaintiff's Second Amended Complaint
**Wilson v. Noshirvan et al.**
Case No. 8:25-cv-00635-JMG-JMD

This is the complete, unaltered document Defendant Noshirvan possessed and deliberately cropped before displaying to 66,000 viewers. The document confirms the restrictions were temporary 2011 pre-trial bail conditions, not permanent court orders and not currently in effect. Compare with Exhibit B-2.

---

| STATE OF NEBRASKA | SUBSEQUENT ORDER OF RELEASE FROM CUSTODY |
| --- | --- |
| CR/TR 218 (9/98) | Exhibit B-1 |

**Douglas County Court, Criminal/Traffic Division**
**1701 Farnam Street, 2nd Floor, Omaha, NE 68183  (402) 444-5386**

STATE OF NEBRASKA,                    Plaintiff,          Case Number: _____

vs.                                                       Docket Number: _____

~~_____~~ Defendant                    SUBSEQUENT ORDER OF RELEASE
                                                         FROM CUSTODY

It appearing to the Court that the defendant has been retained in custody for more than 24 hours because of his/her inability to fulfill conditions of the order of pre-trial release entered herein the Court finds as follows:

1. That the defendant has been informed of his/her right to a review of the condition(s) imposed.
2. That the defendant is aware of his/her right to legal counsel.
   [ ] That legal counsel has been appointed for the purposes of this review.
3. That the condition(s) imposed [ ] are [ ] are not reasonable.
   A. That the conditions imposed are reasonable because of the following:
      [ ] The nature and circumstances of the offense charged
      [ ] Record of flight to avoid prosecution
      [ ] Record of failure to appear at Court proceedings
      [ ] The defendant's:        [ ] Family ties              [ ] Employment
                                  [ ] Financial Resources      [ ] Character and mental condition
                                  [ ] Record of convictions    [ ] Length of residence
                                  [ ] Other:_____
4. That the original order of release shall remain in full force and effect except:
   [ ] A.  No Exceptions.
   [ ] B.  The appearance bond requiring a 10% cash or equivalent deposit with the Clerk shall be reset at $_____ .
   [ ] C.  The bail bond with surety or sureties or cash shall be reset at $_____ .
   [ ] D.  The defendant shall return to custody of the Douglas County Sheriff and remain in custody between the hours of _____ and _____ each day.
   [ ] E.  The defendant be released on his/her personal recognizance.
   [ ] F.  The defendant be released to Pretrial Release or_____who has agreed to supervise him/her, with the understanding that he/she must follow the supervisor's rules.
   [ ] G.  The defendant be released to Pretrial Electronic Monitoring, which has assessed and accepted the defendant.
   [X] H.  Other: Defendant Shall have no contact with anyone less than 19 years of age. Defendant shall not interact with any females on any social networking site. No contact with victim Mikayla Meier.

IN ALL CASES, THE DEFENDANT SHALL:
1. Refrain from unlawful conduct.
2. Not go farther than 10 miles beyond the boundaries of Douglas County, Nebraska.
3. Reside at his/her residence _____
4. Refrain from possessing or using firearms or other weapons.
5. Refrain from possessing or using alcohol or controlled substances.
6. Refrain from any contact with _____ , personally or through another person.

IT IS FURTHER ORDERED BY THIS COURT THAT:
1. A warrant be issued immediately if the defendant violates any of the conditions of this release, in addition to other penalties provided by law as follows:
   [ ] If charged with a felony, not more than 5 years imprisonment and/or a $10,000.00 fine.
   [ ] If charged with a Class II Misdemeanor or with an Ordinance Violation carrying more than a 90-day sentence, not more than 6 months imprisonment and/or a $1,000.00 fine.
2. If the defendant fails to obey the Court's Order to Appear, he/she may be charged with a Class IV Felony and Contempt of Court.
4. The defendant shall not be released from custody until he/she signs this Order acknowledging that he/she understands it.

Date: 3-1-11 _____   Judge _____

I have read and understand or have had explained to me and understand this subsequent order of release from custody.

Date: 3-1-11 _____   Defendant _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

JEROMY WILSON,
 *Plaintiff,*

Case No. 8:25-cv-00635-JMG-JMD

v.

DANESH NOSHIRVAN; CHELSEA
SUAREZ;
TABLE ROCK MANAGEMENT, LLC,

 *Defendants.*

# EXHIBIT B-2

## CROPPED DOCUMENT AS DISPLAYED BY DEFENDANT NOSHIRVAN

*Video 2, Timestamp 14:20 — Header Deliberately Removed Before Display to 66,000 Viewers*

In Support of Plaintiff's Second Amended Complaint
**Wilson v. Noshirvan et al.**
Case No. 8:25-cv-00635-JMG-JMD

Screenshot of the document as Defendant displayed it on camera with the header removed.
Defendant simultaneously published a written video description stating in present tense that
Plaintiff is not supposed to have contact with any woman under 19 — a false present-tense
characterization of expired 2011 bail conditions. Compare with Exhibit B-1.

-------------------- [ ·· ·· ·RU EXHIBIT B-2 CROPPED OPTIONS ONLY PAGE ] --------------------



EXCLUSIVE: Tiktoker with 100k+ Followers is a 3x Sex Offender. @superdadadvocate

ThatDaneshGuy ·
186K subscribers

66,835 views  Oct 29, 2025  OMAHA
Jeromy Wilson aka Superdad aka @voiceofthevoiceless2025 is a registered sex offender and isn't supposed to have contact with any woman under 19.

Brandon has been calling him out for awhile and he's on tiktok as @imnotbeezy

## How this was made

Auto-dubbed

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JEROMY WILSON,                          Case No. 8:25-cv-00635-JMG-JMD

   *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA
SUAREZ;
TABLE ROCK MANAGEMENT, LLC,

   *Defendants.*

# EXHIBIT C(d)

## SUAREZ-NOSHIRVAN COORDINATION EXCHANGE

*"Danesh I Emailed You. I'm Tapping In" — Noshirvan's YouTube Comment Section,*
*Approximately January 23, 2026*

In Support of Plaintiff's Second Amended Complaint

**Wilson v. Noshirvan et al.**

Case No. 8:25-cv-00635-JMG-JMD

Screenshot documenting the pre-publication coordination agreement between Defendant Noshirvan and Defendant Suarez, made publicly in Noshirvan's own comment section after this lawsuit was filed. Noshirvan publicly replied, exchanging contact information. This exchange is the documented origin of the coordinated publication campaign that followed.



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

JEROMY WILSON,                                    Case No. 8:25-cv-00635-JMG-JMD
   *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA
SUAREZ;
TABLE ROCK MANAGEMENT, LLC,

   *Defendants.*


# EXHIBIT D


## EX PARTE HARASSMENT PROTECTION ORDER CI-25-8367

*Douglas County District Court — Protected Parties: Jeromy Wilson and A.D.W. — Respondent:*
*Brandon Taylor — Valid October 1, 2025 Through October 1, 2026*


In Support of Plaintiff's Second Amended Complaint

**Wilson v. Noshirvan et al.**

Case No. 8:25-cv-00635-JMG-JMD


The active protection order at the time Defendant Noshirvan published "Let's help Brandon
against Jeromy Ray Wilson" on October 30, 2025 — 29 days after its issuance. Establishes
that Noshirvan knowingly assisted Plaintiff's protection order respondent while the order
was in effect.

| Image ID D01001564D01<br><br>Form 19-4<br>Neb. Rev. Stat. §§ 26-101 et. seq. | EX PARTE HARASSMENT PROTECTION ORDER | Case Number CI-25-8367<br><br>Document Number 1001564 |
| --- | --- | --- |

IN THE DISTRICT COURT OF  Douglas____  COUNTY, NEBRASKA

## EX PARTE HARASSMENT PROTECTION ORDER

Jeromy Wilson_____

████████████████████

                        **Petitioner**

VS.

Brandon Taylor_____

                        **Respondent**                              __ **RENEWAL**

**The protected party(ies) of this Order is/are:**

1. Jeromy Wilson_____
2. ████████████_____
3. _____
4. _____
5. _____
6. _____
7. _____
8. _____
9. _____
10. _____

THE COURT, having received the Petition and Affidavit for a Harassment Protection Order from the petitioner finds:

- the court has jurisdiction of the parties and subject matter.
- a Harassment Protection Order pursuant to the Protection Orders Act should be issued.
- it reasonably appears from the specific facts included in the Petition and Affidavit that irreparable harm, loss or damage will result before this matter can be heard on notice.
- that a Harassment Protection Order should be issued without prior notice and hearing.
- the respondent has been or will be provided with reasonable notice and opportunity to be heard.

**Only the Court can change this Harassment Protection Order.**

Page 1 of 3

*Exhibit D*

The respondent may appear and explain the reason why this order should not remain in effect for the period listed on this Harassment Protection Order or renewal of the Harassment Protection Order. If the respondent wishes to appear, the respondent must enter their current address, telephone number, and signature on the Request for Hearing form provided. The respondent must return the form to the clerk of the district court within ten (10) business days after being served with the protection order.

This order shall remain in effect during the time prior to the hearing.

Costs are waived unless otherwise ordered by the court.

A copy of this Order and a copy of the Petition and Affidavit will be served on the respondent by the sheriff or their designated representative.
Two (2) certified copies of this Order will be provided to the petitioner(s). The copies to the petitioner(s) may be provided electronically.

### WARNING TO RESPONDENT REGARDING FEDERAL LAWS

· A Protection Order entered against you by this court is enforceable in all fifty states, the District of Columbia, tribal lands, and U.S. territories. (18 U.S.C. § 2265).
· Crossing state, territorial, or tribal boundaries to violate this Protection Order may result in federal imprisonment (18 U.S.C. § 2262).
· If a Protection Order is entered against you by this court, there may be federal penalties for possessing, transporting, or accepting a firearm or ammunition. (18 U.S.C. § 922(g)(8)).

DATED on: October 1, 2025

JUDGE - Sheryl Lohaus

Printed on 10/01/2025 at 5:04 P.M.

Page 3 of 3

CASE FILE COPY

FILED BY

Clerk of the Douglas District Court
10/01/2025

THE COURT, upon review of the Petition and Affidavit, finds that the petitioner(s) has/have stated facts showing that the respondent engaged in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose.

IT IS ORDERED, unless otherwise dismissed or modified by order of the court, a Harassment Protection Order against the respondent is granted.

The protection order is for a period of at least one (1) year and no more than two (2) years from the date of this order unless dismissed or modified by the court.

This Harassment Protection Order is valid beginning on <u>10/01/2025</u> and ending on <u>10/01/2026</u> .

The petitioner(s)/protected party(ies) is/are granted the following relief:

__X__  1. The respondent must not impose any restraint upon the person or liberty of the petitioner(s)/protected party(ies).

__X__  2. The respondent must not harass, threaten, assault, molest, attack, or otherwise disturb the peace of the petitioner(s)/protected party(ies).

__X__  3. The respondent must not telephone, contact, or otherwise communicate with the petitioner(s)/protected party(ies).

_____  Other relief granted by the court:

_____
_____
_____
_____
_____
_____
_____

Page 2 of 3

## PROTECTION ORDER INFORMATION – HARASSMENT
### The Nebraska laws on Harassment Protection Orders can be found at:
### Neb. Rev. Stat. § 26-101 et. seq.

**Words or Terms to Know:**

**Course of conduct** is a pattern of acts/behavior over a period of time.
- It has been more than one time that the acts/behavior have happened.
- It does not have to be a long time between the acts/behavior happening.
- These acts/behavior may include:
  - following
  - detaining,
  - restraining the personal liberty of the petitioners/protected party(ies),
  - stalking,
  - telephoning,
  - contacting, and/or
  - communicating with the petitioner(s)/protected party(ies) in any other way.

**Ex Parte Order** is an order made by a judge after only hearing from one side and without the other side knowing or being present.

**Harass** means to engage in a knowing and willful course of conduct that is meant to seriously terrify, threaten, or intimidate the person and serves no legitimate (legal, reasonable, valid) purpose.

**Harassment Protection Order** is a court order issued to the Petitioner(s)/Protected Party(ies) who has/have been harassed. The order tells the Respondent what they are **NOT** allowed to do.

**Petition and Affidavit** is a form filed by the Petitioner(s) asking the court for a Harassment Protection Order.

**Petitioner(s)** is/are the person who is asking for the Harassment Protection Order for themselves or on behalf of another party.

**Protected Party(ies)** is/are the person(s) listed on the Petition and Affidavit form that protection is being requested for.

**Respondent** is the person the Petitioner has claimed is harassing them or the others listed on the petition.

**Serve or Served** is when court documents are physically given to the Respondent by the Sheriff or their designated representative.

**Show Cause Hearing** is scheduled by a judge so the Respondent can give the reasons why the Harassment Protection Order should not be issued or renewed.

**The court may treat a Petition and Affidavit for a Harassment Protection Order as a Petition and Affidavit for a Sexual Assault Protection Order or a Domestic Abuse Protection Order.**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

JEROMY WILSON,
   *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA SUAREZ;
TABLE ROCK MANAGEMENT, LLC,
   *Defendants.*

Case No. 8:25-cv-00635-JMG-JMD

## EXHIBIT E

OPS Student Services Contact Log — Western Hills Elementary School, Omaha Public Schools.

Two pages: Page 27/30 (November 3, 2025 entry, CPS Report #1151879) and Page 29/30 (December 18, 2025 entry). These records document the direct causal chain between Defendant Noshirvan's targeted publications and mandatory CPS intervention involving Plaintiff's minor daughter. Obtained directly from Omaha Public Schools.

## [ INSERT OPS SCHOOL RECORD PAGES 27/30 AND 29/30 BEHIND THIS COVER PAGE ]

| **Western Hills Elementary**<br>6523 Western Ave, Omaha, NE68132-1262<br>Page 27 of 30 | | Grade: ██ | Birth Dat██ | ████ Student Number ██ |

| Contacted About | Contact Date/Time | Contact Type | Contacted | Contacted by |
|---|---|---|---|---|
| ████ | 11/03/2025 9:40 AM | Telephone | DHHS/CPS | Automated, update |

[ContactedBy:Leggiadro, Brenda] [Contacted:Utterback, Lisa] CPS call made. Report #1151879 was made concerning video sent via email to members of Omaha Public Schools leadership and Board of Education members.

| Contacted About | Contact Date/Time | Contact Type | Contacted | Contacted by |
|---|---|---|---|---|



| Contacted About | Contact Date/Time | Contact Type | Contacted | Contacted by |
|---|---|---|---|---|

| Contacted About | Contact Date/Time | Contact Type | Contacted | Contacted by |
|---|---|---|---|---|

*Exhibit E*

| **Western Hills Elementary**<br>6523 Western Ave, Omaha, NE68132-1262<br>Page 29 of 30 | | Student Services Contact Log |
|---|---|---|
| | **Grade** ▉ \| **Birth Date:** ▉ \| **Student Number:** ▉ | |

Consult re: legal document

| **Contacted About** | **Contact Date/Time** | **Contact Type** | **Contacted** | **Contacted by** |
|---|---|---|---|---|
| ▉ | 12/18/2025 12:40 PM | Telephone | CPS | MacFarland, Anne |

Received call from a community member regarding a non-family member living in the home. Individual reported to be on the Sex Offender Registry. Made an informational report to CPS

| **Contacted About** | **Contact Date/Time** | **Contact Type** | **Contacted** | **Contacted by** |
|---|---|---|---|---|



| **Contacted About** | **Contact Date/Time** | **Contact Type** | **Contacted** | **Contacted by** |
|---|---|---|---|---|

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

JEROMY WILSON,
    *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA SUAREZ;
TABLE ROCK MANAGEMENT, LLC,
    *Defendants.*

Case No. 8:25-cv-00635-JMG-JMD

## EXHIBIT F

Iowa Courts Online Electronic Docket Record — Case No. 03971 JVJV013171, Woodbury County, Iowa.

Both charges — Assault w/Intent Sex Abuse/No Injury (Aggravated Misdemeanor) and Assault, Violation of Individual Rights (Serious Misdemeanor) — carry adjudication status "DNU-DISMISSED," disposition TRANSFERRED, dated October 6, 2003. No conviction. Retrieved from Iowa Courts Online public access system.

## [ INSERT IOWA COURTS ONLINE DOCKET RECORD BEHIND THIS COVER PAGE ]

5:39PM  Fri Mar 13                                                                          84%

□  <                               🖥  iowacourts.state.ia.us  🔲 ↻                    ⬆ ＋ ❑

## Iowa Courts Online
## Electronic Docket Record Search

**Search Results**

**Print All Pages**

**Help**
**Home**
**New Search**

**Back**

### Trial Court Case Details

| [Summary] | Parties | [Long Title] | [Filings] | Property/Lis Pendens | [Criminal Charges/Disposition] | Judgment/Liens |
| Exhibits | [Financial] | [Bonds] | Service Returns | Traffic Details | | *Register Now!* |

### Summary
Title: IN RE: JEROMY RAY WILSON
Case: 03971 JVJV013171 (WOODBURY)

| **Originating County** | **Created** |
|---|---|
| WOODBURY | 08/11/2003 |

| **Disposition Status** | **Disposition Date** | **Reopened Date** | **Microfilm Ref** |
|---|---|---|---|
| TRANSFERRED | 10/06/2003 | | |

### Charges     Speedy Trial:

| Count | Original Charge | Offense Date | Charge Class | Adjudication | Adjudication Charge | Adjudication Class |
|---|---|---|---|---|---|---|
| 01 | ASSAULT W/INTENT SEX ABUSE/NO INJ. (AGMS) | 05/29/2003 | AGGRAVATED MISDEMEANOR | DNU-DISMISSED | ASSAULT W/INTENT SEX ABUSE/NO INJ. (AGMS) | AGGRAVATED MISDEMEANOR |
| 02 | ASSAULT, VIOL OF INDIVIDUAL RIGHTS (SRMS) | 05/29/2003 | SERIOUS MISDEMEANOR | DNU-DISMISSED | ASSAULT, VIOL OF INDIVIDUAL RIGHTS (SRMS) | SERIOUS MISDEMEANOR |

CN=John Q Public,O=JUDICIAL

Logon  **Register**

For exclusive use by the Iowa Courts
© State of Iowa, All Rights Reserved

*Exhibit F*



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

JEROMY WILSON,
    *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA SUAREZ;
TABLE ROCK MANAGEMENT, LLC,
    *Defendants.*

Case No. 8:25-cv-00635-JMG-JMD

## EXHIBIT G

Screenshot — Chelsea Suarez YouTube Video, "TikTok's Super Dad Official Gets Much Worse | Jeromy Wilson," published February 18, 2026.

Post-lawsuit publication by Defendant Suarez on channel @IAMCCSuarez. Screenshot depicts video title, channel name, publication date, and view count as visible on YouTube at time of capture. Coordinated same-day with Noshirvan's promotion of the content.

**[ INSERT SUAREZ FEBRUARY 18, 2026 YOUTUBE VIDEO SCREENSHOT BEHIND THIS COVER PAGE ]**



5:36 PM  Fri Mar 13                                                      82%

☰  ▶ YouTube          Chelsea suarez              ✕  🔍  🎤          ✛ Create

All    From CC Suarez    Related    For you    >



**TikToker SuperDadOfficial EXPOSED AND BANNED for …**
CC Suarez
116K views · 1 month ago



**The Dark Truth Behind Viral TikTok Mom 'Stand With Meg' …**
CC Suarez
142K views · 1 month ago



**Wannabe Gangsters Think They Got Away With Murder (They …**
Solved Files - Interrogation
1.2M views · 6 days ago
New



**Sinna Bunny Hired the WORST LAWYER to SILENCE ME!**
CC Suarez
64K views · 6 months ago

## TIKTOKS 'SUPER DAD OFFICIAL' GETS MUCH WORSE | JEROMY WILSON

 **CC Suarez**       Join    Subscribe        ↪ Share   ✦ Ask   🔖 Save   •••
219K subscribers



**The TOXIC People Of Reddit**
Kal mekri
424K views · 2 weeks ago

**38,695 views  Feb 18, 2026**  #tiktok #SCAM #CCSUAREZ
CONNECT  WITH  ME :
Podcasts- @okayestdaughterspodcast @eliesabethpodcast
All social media, merch & shop my posts-
https://linktr.ee/iamccsuarez
PO Box: 3690 W Gandy BLVD 150 Tampa FL 33611



**Engaged after 6 weeks to a man who served 13 years**
READY TO GLARE ✓
117K views · 3 weeks ago



**Wait... Disney Is Putting People**


*Exhibit G*

5:36 PM  Fri Mar 13                                                                      83%

youtube.com

 

☰  ▶ YouTube          Chelsea suarez          ✕  🔍  🎤          ➕ Create

2 9K subscribers

**38,695 views  Feb 18, 2026** #tiktok #SCAM #CCSUAREZ
CONNECT  WITH  ME :
Podcasts- @okayestdaughterspodcast @eliesabethpodcast
All social media, merch & shop my posts-
https://linktr.ee/iamccsuarez
PO Box: 3690 W Gandy BLVD 150 Tampa FL 33611


MENTIONED IN THIS VIDEO:
- bitly and rstyle links are affiliate links.*


REACTION CLIP SUBMISSIONS:
Upload the clip/recording to Google Drive, then email me the link/share access with my email
Chelsea@chelseasuarez.com

VIDEO SUGGESTIONS: Email me your topic suggestions to Chelsea@chelseasuarez.com. Please include ' Video Topic
Suggestion' in the subject line. Also, include sources/links and why you think I should do a video on the subject.

Management/PR Inquiries - contact@tablerock.com


#CCSUAREZ #SCAM #tiktok

"Super Dad Official" content is further examined, revealing concerning new details. The video...        ◆ Summary  ⌄

## Ask

Get answers, explore topics, and more


◆  Ask questions


424K views · 2 weeks ago


**Engaged after 6 weeks to a man who served 13 years**         ⋮
READY TO GLARE ✓
177K views · 3 weeks ago


**Wait... Disney Is Putting People in DEBT & JAIL?!**         ⋮
Social Symone ✓
157K views · 2 weeks ago


**Neurosurgeon Influencer Called Out By Pharmacist Influencer I...**         ⋮
MARKIE ✓
127K views · 2 days ago
New


**TikTok Delusions:  from Stalked by Feds & celebrities to Ai ...**         ⋮
CC Suarez
76K views · 1 month ago


**When Entitled Karens Get The Surprise of Their Lives**         ⋮
Courtfuse ✓ and Blueline Bodycam
741K views · 6 months ago


**Karissa Collins: Exploited & Unsupervised**         ⋮
CC Suarez
246K views · 1 year ago

You're a manager

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

JEROMY WILSON,
   *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA SUAREZ;
TABLE ROCK MANAGEMENT, LLC,
   *Defendants.*

Case No. 8:25-cv-00635-JMG-JMD

### EXHIBIT H

California Secretary of State Bizfile Online Entity Record —
Table Rock Management, LLC.

California Entity No. 201625910183, formed September 9, 2016, active good standing. Principal address: 5291 California Avenue, Suite 350, Irvine, CA 92617. Registered agent: Corporation Service Company d/b/a CSC — Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, CA. Retrieved from California Secretary of State Bizfile Online public database.

### [ INSERT CALIFORNIA BIZFILE ENTITY RECORD BEHIND THIS COVER PAGE ]

1:14    ::!! 5G 73

 ✕  **bizfileonline.sos.ca.gov**   *Exhibit H*

☰    Login

**TABLE ROCK MANAGEMENT, LLC (201625910183)**    ✕



**Request Certificate**

| | |
|---|---|
| *Initial Filing Date* | **09/09/2016** |
| *Status* | **Active** |
| *Standing - SOS* | **Good** |
| *Standing - FTB* | **Good** |
| *Standing - Agent* | **Good** |
| *Standing - VCFCF* | **Good** |
| *Formed In* | **CALIFORNIA** |
| *Entity Type* | **Limited Liability Company - CA** |
| *Principal Address* | **5291 CALIFORNIA AVENUE SUITE 350 IRVINE, CA 92617** |
| *Mailing Address* | **5291 CALIFORNIA AVENUE SUITE 350 IRVINE,CA92617** |
| *Statement of Info Due Date* | **09/30/2026** |
| *Agent* | **1505 Corporation CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE** |
| *CA Registered Corporate (1505) Agent Authorized Employee(s)* | **KOY SAECHAO 2710 GATEWAY OAKS DRIVE, SACRAMENTO, CA** |

      

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

JEROMY WILSON,
 *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA SUAREZ;
TABLE ROCK MANAGEMENT, LLC,
 *Defendants.*

Case No. 8:25-cv-00635-JMG-JMD

## EXHIBIT I

Email from Chelsea Suarez to Plaintiff Jeromy Wilson, dated January 22, 2026.

Sent following Suarez's "I'm tapping in" coordination exchange with Defendant Noshirvan. Suarez notified Plaintiff she intended to make videos about him before ever seeking comment from him. Establishes pre-decided publication intent and the pretextual nature of her subsequent January 26, 2026 pre-publication inquiry.

## [ INSERT JANUARY 22, 2026 EMAIL FROM SUAREZ TO PLAINTIFF BEHIND THIS COVER PAGE ]

 Gmail

## Super Dad Official

Exhibit I

**Chelsea Suarez** <chelsea@chelseasuarez.com>                    Thu, Jan 22, 2026 at 2:10 PM
To: djjiik2015@gmail.com

Hello Jeromy,

My name is Chelsea "CC" Suarez. I am a content creator and independent journalist working on a piece examining online child advocacy content and the concerns raised by members of the public.

I am reaching out to offer you the opportunity to provide an official statement regarding several matters that are currently circulating publicly and that I am reviewing as part of this coverage.

Specifically, I am requesting comment on the following:

- Public records indicating your placement on a sex offender registry stemming from multiple past incidents

- Alleged legal abuse used to intimidate and silence those who share their opinions about you on social media

- Your repeated account bans and re-entries on TikTok under new usernames

- Your role as the custodial parent of a minor child with disabilities and the nature of the content involving her that is shared publicly.

- Allegations from multiple individuals that they were doxxed after raising concerns, including the posting of private information and images of personal residences

- Concerns raised regarding individuals residing in your household and their backgrounds, as discussed in publicly accessible forums.

To be clear, I am referencing information that is already publicly available or widely discussed online. This email is being sent to give you the opportunity to respond, clarify, or provide context in your own words.

If you would like to submit a statement, please respond by **January 27th**. If I do not hear back by that time, I will note that you were contacted and declined to comment.

Please keep any response factual and relevant to the points above.

Thank you for your time.



CHELSEA *Suarez*

PRODUCER & OWNER

HFTC MEDIA

chelsea@chelseasuarez.com

3690 W Gandy Blvd, #150 Tampa, FL 33611

www.chelseasuarez.com

 Gmail

## Super Dad Official

**Jeromy Wilson** <djjiik2015@gmail.com>
To: Chelsea Suarez <chelsea@chelseasuarez.com>

Tue, Jan 27, 2026 at 7:08 AM

Chelsea,

Due to ongoing and active litigation in both state and federal court, I am not able to provide comment on many of the matters you reference, nor can I litigate allegations or narratives through media or social platforms.

I categorically deny any suggestion that I engage in harassment, intimidation, or unlawful conduct. Any claims to the contrary are inaccurate, misleading, taken out of context, or are currently being addressed through appropriate legal channels.

I must also note that the manner in which your inquiry is framed as a series of asserted allegations rather than neutral, open-ended questions does not reflect a request originating from a position of journalistic neutrality. As a result, I am limiting my response to this written statement and declining to engage in point-by-point commentary.

Further, many of the topics you reference concern private family matters, ongoing court proceedings, and issues that are not matters of public concern or public accountability. These are not appropriate subjects for speculative commentary, online amplification, or character-based scrutiny outside of formal legal processes.

Additionally, identifying oneself as a reporter or journalist does not provide license to publish false, misleading, or defamatory statements under the guise of "public record." Information that is inaccurate, selectively presented, or stripped of material context is not rendered factual by repetition or characterization as publicly available.

While I recognize that reporting on publicly available information is not something I can prohibit, I will take appropriate legal action should any material you publish be inaccurate, misleading, inflammatory, or materially misrepresented.

With respect to my minor child, I will not provide public comment on her, her disability, or any content involving her beyond what is already part of the public court record. Her privacy, safety, and well-being are paramount.

I am aware that information circulated online is frequently presented without full context, relies on unverified or anonymous sources, or omits material facts. For that reason, I will not respond to speculative, character-based, or inflammatory allegations framed outside of verified court findings.

You are free to note that I was contacted and that I declined to provide further comment due to ongoing legal proceedings.

I respectfully request that you refrain from publishing private residential information or material involving my minor child.

Regards,

Jeromy Wilson

 Gmail

---

## Super Dad Official

---

**Chelsea Suarez** <chelsea@chelseasuarez.com>                    Tue, Jan 27, 2026 at 8:02 AM
To: Jeromy Wilson <djjiik2015@gmail.com>

Jeromy,

A simple "no comment due to ongoing legal proceedings" would have been sufficient.

I will note that you were contacted and declined to provide further comment.



CHELSEA *Suarez*
PRODUCER & OWNER
HFTC MEDIA
chelsea@chelseasuarez.com
3690 W Gandy Blvd, #150 Tampa, FL 33611
www.chelseasuarez.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JEROMY WILSON,
  *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA SUAREZ;
TABLE ROCK MANAGEMENT, LLC,
  *Defendants.*

Case No. 8:25-cv-00635-JMG-JMD

## EXHIBIT J

Legal Notice and Demand for Retraction, Removal, and Evidence Preservation — Plaintiff to Defendant Danesh Noshirvan, dated January 25, 2026.

Sent directly to Defendant Noshirvan's personal email address before he had retained counsel. Plaintiff has delivery confirmation of receipt. Identifies specific false statements, demands retraction and removal, and places Defendant on formal written notice of evidence preservation obligations. Every Noshirvan publication after January 25, 2026 was made with actual written notice of Plaintiff's falsity claims.

**[ INSERT JANUARY 25, 2026 LEGAL NOTICE TO
NOSHIRVAN WITH DELIVERY CONFIRMATION
BEHIND THIS COVER PAGE ]**

 Gmail

---

## LEGAL NOTICE – Demand for Retraction/Removal & Evidence Preservation (8:25-cv-00635)

---

**Jeromy Wilson** <djjiik2015@gmail.com>    Sun, Jan 25, 2026 at 8:17 PM
To: daneshnoshirvan@gmail.com

Danesh,

Attached is my LEGAL NOTICE AND DEMAND FOR RETRACTION/REMOVAL AND EVIDENCE PRESERVATION (ANTI-SPOLIATION) NOTICE related to:

Jeromy Wilson v. Danesh Noshirvan

United States District Court – District of Nebraska

Case No. 8:25-cv-00635

This notice concerns false and inflammatory statements you have published and/or republished about me and my minor child across social media platforms, including but not limited to YouTube, TikTok, Facebook, and Instagram, and any other platform where you have posted about us. Your most recent YouTube video posted on the 21st also contains false and inflammatory information.

Please review the attached notice immediately and comply with the demands within the stated timeframe.

Please confirm receipt of this email and attachment by replying "Received."


*Jeromy Wilson*

*Omaha, Nebraska 68111*

📞 *(402) 415-9016*

 *djjiik2015@gmail.com*


📄 **Legal Notice & Demand.pdf**
7K

# LEGAL NOTICE AND DEMAND FOR RETRACTION/REMOVAL AND EVIDENCE PRESERVATION (ANTI-SPOLIATION) NOTICE

United States District Court – District of Nebraska
Case No. 8:25-cv-00635
Jeromy Wilson, Plaintiff v. Danesh Noshirvan, Defendant

**DATE:** January 26, 2026
**TO:** Danesh Noshirvan
**VIA:** Email (Written Notice)
**FROM:** Jeromy Wilson, 4213 Corby Street, Omaha, NE 68111 | 402-415-9016 | djjiik2015@gmail.com
**RE:** Notice of False Statements, Demand for Retraction/Removal, and Evidence Preservation Notice
**FEDERAL CASE:** Jeromy Wilson v. Danesh Noshirvan, Case No. 8:25-cv-00635 (D. Nebraska)

Danesh Noshirvan:

This notice demands immediate retraction/correction and removal of false statements you have made and/or republished about me, and preservation of all related evidence. These statements have been made across multiple social media platforms, including but not limited to Facebook, Instagram, YouTube, TikTok, and any other platform where you have posted content about me or my minor child. Your most recent YouTube video posted on the 21st contained false and inflammatory statements about me.

The only statement of fact that may be truthful from your statements is that I am on the registry. Formulating opinions, insinuations, or accusations and spreading them as fact is not acceptable and is actionable.

**Additional Notice – Third-Party Incitement / Harassment by Proxy:** Your posts and communications have not remained "online commentary." Instead, your publication of false and inflammatory accusations has foreseeably caused and encouraged third parties within your community and audience to contact local Child Protective Services (CPS), law enforcement, and other government agencies regarding me and my family without justifiable cause, creating harassment through misuse of official systems. Your statements and posts have operated as a call-to-action and have directly contributed to reports and contacts made to CPS and other agencies based on misinformation, interference with my personal life and parental relationship, increased threats and harassment stemming from your followers and viewers, and coordinated amplification and repetition of the false narrative. Further, your publication has been adopted, repeated, and expanded by other large content creators who have relied on your narrative to create additional posts and videos, causing the false information to spread substantially farther and resulting in compounding harm. You are hereby placed on notice that publishing false information with the intent to provoke third-party action, or with reckless disregard as to whether such action would occur, constitutes unlawful harassment and interference and may support claims for damages and additional relief, including injunctive relief, based on the ongoing and escalating harm.

## 1. NOTICE OF FALSITY – DEMAND FOR RETRACTION/REMOVAL

1. Any statement calling me a "pedophile," "child predator," or claiming I am sexually attracted to children or pose a threat to minors.

2. Any statement implying I am a danger to children, a "public safety threat," or otherwise unsafe around minors, including my child.

3. Any statement alleging or implying that I manipulated, deceived, lied to, or committed fraud upon a court or agency to obtain custody.

4. Any statement presented as fact that I am a "narcissist," including claims of Narcissistic Personality Disorder (NPD) or other diagnosis.

5. Any statement encouraging others to "look me up," "expose," "find," "contact," "report," "dox," or take real-world action against me.

6. Any statement identifying, depicting, referencing, or targeting my minor child online, including insinuations she is unsafe with me.

7. Any statement claiming or implying that I abused the mother of my child (domestic violence, threats, coercion, stalking, or similar).

8    Any statements, posts, or conduct that encourage, solicit, or provoke third parties to contact or report me to CPS, law enforcement, courts, schools, or other government agencies based on false or inflammatory information, thereby inciting harassment, retaliation, and interference through misuse of official systems.

## 2. DEMAND – DEADLINE TO COMPLY

Within 48 hours of receipt of this notice, you must (1) remove all content containing false statements described above; (2) cease and desist from repeating them; (3) post a clear retraction/correction on the same platform(s); and (4) confirm completion by reply email.

## 3. EVIDENCE PRESERVATION NOTICE (ANTI-SPOLIATION)

You must immediately preserve all evidence related to these statements and your postings about me and/or my child on Facebook, Instagram, YouTube, TikTok, and any other platform, including all content and associated metadata (timestamps, edits, deletions), drafts, archives, account identifiers, login history, communications with third parties, and analytics/monetization records where applicable. This preservation demand also includes all evidence of third-party coordination or incitement, including follower comments/messages discussing contacting CPS or law enforcement, any posts encouraging reporting or "taking action," communications with other creators about posting content about me, and evidence of reposting, tagging, stitching, duetting, or collaboration tied to your narrative. Do not delete, alter, edit, private, archive, deactivate, or "clean up" any content. Deletion or alteration after receipt of this notice may constitute spoliation.

## 4. NO HARASSMENT / NO CONTACT

Cease any direct or indirect harassment, including repeated online mention intended to provoke threats or interference. Do not contact my minor child.

## 5. NOTICE OF DELIVERY / CONTACT ADDRESS USED BY DEFENDANT

This Legal Notice is being transmitted by email to **daneshnoshirvan@gmail.com**, an email address previously used by you to communicate with me and an address associated with you in other federal matters. You have previously sent communications from this email address, and I have previously sent communications to this email address. Please confirm receipt of this notice by reply email.

## 6. RESERVATION OF RIGHTS

Nothing in this notice waives any rights, claims, defenses, or remedies. All rights are expressly reserved.

**Respectfully,**

/s/ Jeromy Wilson
Jeromy Wilson
Dated: January 26, 2026

4213 Corby Street
Omaha, NE 68111
402-415-9016
djjiik2015@gmail.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

JEROMY WILSON,
    *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA SUAREZ;
TABLE ROCK MANAGEMENT, LLC,
    *Defendants.*

Case No. 8:25-cv-00635-JMG-JMD

## EXHIBIT K

TikTok Direct Message from Chelsea Suarez to Plaintiff Jeromy Wilson, dated January 26, 2026.

Suarez identified herself as a "content creator and independent journalist" and requested comment on allegations framed as facts, reflecting Noshirvan's false characterizations. Sent after Suarez had already notified Plaintiff by email on January 22, 2026 of her intent to publish.

**[ INSERT JANUARY 26, 2026 TIKTOK DIRECT MESSAGE FROM SUAREZ BEHIND THIS COVER PAGE ]**

12:04



Exhibit K



# iamccsuarez

@iamccsuarez

1176 following · 42.9K followers

**Hello Jeromy,
My name is Chelsea "CC"
Suarez. I am a content creator
and independent journalist
working on a piece examining
online child advocacy content
and the concerns raised by
members of the public.**

**I am reaching out to offer you**

## sent you a message request

We ask that you review these requests
carefully. Accepting this request will let you
reply to this chat immediately. If you delete,
this chat will be removed from your message
requests.

Report        Delete        Accept

12:04

  **iamccsuarez**

I am reaching out to offer you the opportunity to provide an official statement regarding several matters that are currently circulating publicly and that I am reviewing as part of this coverage.

Specifically, I am requesting comment on the following:

Public records indicating your placement on a sex offender registry stemming from multiple past incidents

Alleged legal abuse used to intimidate and silence those who share their opinions about you on social media

Your repeated account bans and re-entries on TikTok under new usernames

## sent you a message request

We ask that you review these requests carefully. Accepting this request will let you reply to this chat immediately. If you delete, this chat will be removed from your message requests.

Report          Delete          Accept

12:04

 **iamccsuarez**

Your role as the custodial parent of a minor child with disabilities and the nature of the content involving her that is shared publicly.

Allegations from multiple individuals that they were doxxed after raising concerns, including the posting of private information and images of personal residences

Concerns raised regarding individuals residing in your household and their backgrounds, as discussed in publicly accessible forums.

To be clear, I am referencing information that is already publicly available or widely discussed online. This email is being sent to give you the

## sent you a message request

We ask that you review these requests carefully. Accepting this request will let you reply to this chat immediately. If you delete, this chat will be removed from your message requests.

Report          Delete          Accept

 **iamccsuarez**

individuals residing in your household and their backgrounds, as discussed in publicly accessible forums.

To be clear, I am referencing information that is already publicly available or widely discussed online. This email is being sent to give you the opportunity to respond, clarify, or provide context in your own words.

If you would like to submit a statement, please respond by January 27th. If I do not hear back by that time, I will note that you were contacted and declined to comment.

Please keep any response factual and relevant to the points above.

## sent you a message request

We ask that you review these requests carefully. Accepting this request will let you reply to this chat immediately. If you delete, this chat will be removed from your message requests.

Report          Delete          Accept

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

JEROMY WILSON,
    *Plaintiff,*

v.

DANESH NOSHIRVAN; CHELSEA SUAREZ;
TABLE ROCK MANAGEMENT, LLC,
    *Defendants.*

Case No. 8:25-cv-00635-JMG-JMD

## EXHIBIT L

Email Chain and Legal Notices — Plaintiff to Chelsea Suarez, dated January 27, 2026.

Includes: (1) Plaintiff's written response to Suarez notifying her of active federal and state litigation, categorically denying all allegations, warning against publication of false material, and requesting she not involve his minor child; and (2) Plaintiff's anti-spoliation notice and demand for retraction and removal served to chelsea@chelseasuarez.com. Suarez received this written warning and anti-spoliation demand before publishing any video.

**[ INSERT JANUARY 27, 2026 EMAIL CHAIN AND
LEGAL NOTICES TO SUAREZ BEHIND THIS COVER
PAGE ]**

 Gmail

## Notice of Attached Legal Notices



**Jeromy Wilson <djjiik2015@gmail.com>**                    Tue, Jan 27, 2026 at 6:57 PM
To: Chelsea Suarez <chelsea@chelseasuarez.com>

Please be advised that the attached documents include both a Demand for Retraction/Removal and an Evidence Preservation (Anti-Spoliation) Demand.

You are instructed to review the attached files carefully and comply with the requirements set forth therein.

Please confirm receipt of this email and the attachments.

Thank you,

**Jeromy Wilson**

*Omaha, Nebraska 68111*

📞 *(402) 415-9016*

   *djjiik2015@gmail.com*

**2 attachments**

 **Legal Notice & Demand At Large.pdf**
    5K

 **Evidence Preservation Demand.pdf**
    5K

## LEGAL NOTICE AND DEMAND FOR RETRACTION/REMOVAL
## AND EVIDENCE PRESERVATION (ANTI-SPOLIATION) NOTICE

**DATE:** January 27, 2026
**VIA:** Email and U.S. Mail
**FROM:** Jeromy Wilson, 4213 Corby Street, Omaha, NE 68111 | 402-415-9016 | djjiik2015@gmail.com

This notice serves as a formal legal demand for the immediate retraction, correction, and removal of false and defamatory statements you have made and/or republished about me, as well as a demand for the preservation of all related evidence. These statements have been published across social-media platforms including, but not limited to YouTube, TikTok, Facebook, Instagram, and any other platform where you have posted content about me or my minor child.

The only statement of fact that may be truthful from anything you have stated or repeated is that I am on a public registry. Formulating personal opinions, insinuations, or accusations and presenting them as fact is not accurate, not protected, and is actionable.

### ADDITIONAL NOTICE – THIRD-PARTY INCITEMENT / HARASSMENT BY PROXY

Your posts and communications have not remained mere commentary. Instead, the publication and repetition of false and inflammatory accusations has foreseeably caused and encouraged third parties to contact Child Protective Services (CPS), law enforcement, courts, schools, and other government agencies regarding me and my family without justifiable cause. This conduct constitutes harassment by proxy, misuse of official systems, and unlawful interference. Your content has also been adopted, amplified, and repeated by other creators, compounding the harm.

### 1. NOTICE OF FALSITY – DEMAND FOR RETRACTION/REMOVAL

1   Statements calling me a pedophile, child predator, or claiming I pose a threat to minors.

2   Statements implying I am a danger to children or unsafe around my child.

3   Statements alleging I deceived or manipulated courts or agencies to obtain custody.

4   Statements presented as fact that I am a narcissist or have a mental-health diagnosis.

5   Statements encouraging others to report, expose, or take real-world action against me.

6   Statements identifying or targeting my minor child.

7   Statements alleging abuse toward the mother of my child.

8   Statements provoking third parties to contact CPS, law enforcement, or other agencies based on false information.

### 2. DEMAND – DEADLINE TO COMPLY

Within 48 hours of receipt of this notice, you must remove all false content, cease further publication, issue a correction or retraction on the same platform(s), and confirm compliance by reply email.

### 3. EVIDENCE PRESERVATION NOTICE (ANTI-SPOLIATION)

You must preserve all content, drafts, deleted material, metadata, account data, communications with third parties, and analytics related to the content at issue. Do not delete, alter, or conceal any information. Any destruction or alteration after receipt of this notice may constitute spoliation of evidence.

### 4. NO HARASSMENT / NO CONTACT

Cease any direct or indirect harassment and do not contact my minor child.

### 5. RESERVATION OF RIGHTS

Nothing in this notice waives any rights or remedies. All rights are expressly reserved.

/s/ Jeromy Wilson
Jeromy Wilson
Dated: January 27, 2026

4213 Corby Street
Omaha, NE 68111
402-415-9016
djjiik2015@gmail.com

## EVIDENCE PRESERVATION AND ANTI-SPOLIATION DEMAND

**Date:** January 28, 2026

This letter serves as a formal demand that you, your agents, employees, affiliates, representatives, and all associated individuals or entities immediately preserve and refrain from altering, deleting, destroying, concealing, or otherwise disposing of any and all documents, data, communications, and electronically stored information ("ESI") that may be relevant to ongoing litigation or any potential claims arising therefrom. This demand includes, but is not limited to, evidence relevant to potential claims for sanctions under Federal Rule of Civil Procedure 37, the Court's inherent authority, and any potential violations of applicable federal or state law.

This preservation demand relates to disputes arising from alleged wrongful conduct and related matters as described in pleadings pending in federal court. This demand is issued to ensure the integrity of evidence relevant to claims, defenses, counterclaims, and any independent actions or motions that may arise, including motions for sanctions or other relief.

### IDENTIFIERS / SEARCH TERMS
For avoidance of doubt, this preservation obligation applies to any materials referencing me under any identifier, username, nickname, or descriptor, including but not limited to:
- Jeromy Wilson
- Jeremy Wilson
- Wilson
- "Super Dad"
- "Lawsuit Guy"

## SCOPE OF PRESERVATION

You must immediately take all necessary steps to preserve the following categories of information in their native format, including all associated metadata, for the period January 1, 2025, to the present:

- All emails (including drafts, sent, received, deleted, archived, and attachments) referencing the identifiers above, the subject matter of the dispute, witnesses, events, or potential claims or defenses.

- All chat messages, instant messages, or direct messages (including Slack, Microsoft Teams, Discord, Facebook Messenger, Signal, Telegram, and similar platforms).

- All text messages (SMS, MMS, iMessage, WhatsApp, or similar) on personal or business devices.

- All social media content, including posts, videos, livestreams, captions, comments, replies, drafts, archived content, deleted content, and associated metadata.

- All voicemails, call logs, notes, databases, internal records, or other electronically stored information relating to the above.

## SYSTEMS AND LOCATIONS

This obligation extends to all devices, systems, and locations where responsive information may reside, including computers, mobile devices, servers, external storage, cloud services (including Google Drive, Dropbox, Microsoft OneDrive, and iCloud), backups, and third-party providers under your control or reasonably accessible to you. You must immediately suspend any routine deletion, overwriting, or auto-purge policies.

## CONSEQUENCES OF NON-COMPLIANCE

Failure to preserve evidence after receipt of this demand may constitute spoliation of evidence and may result in severe sanctions, including adverse inferences, monetary sanctions, evidentiary exclusions, or dismissal of claims or defenses pursuant to Fed. R. Civ. P. 37(e) and applicable law.

## CONFIRMATION REQUIRED

Please confirm in writing within seven (7) days of receipt of this letter that you have received this demand, implemented appropriate preservation measures, and notified all relevant custodians, IT personnel, and associates. Provide a general description of the steps taken.

/s/ Jeromy Wilson
Jeromy Wilson
Dated: January 28, 2026

4213 Corby Street
Omaha, NE 68111
djjiik2015@gmail.com

 Gmail

---

## Notice of Attached Legal Notices

---

**Chelsea Suarez** <chelsea@chelseasuarez.com>                 Tue, Jan 27, 2026 at 7:23 PM
To: Jeromy Wilson <djjiik2015@gmail.com>

Jeromy,

That's insane.

Sent from my iPhone

> On Jan 27, 2026, at 7:57 PM, Jeromy Wilson <djjiik2015@gmail.com> wrote:
>
>
> <Legal Notice & Demand At Large.pdf>
> <Evidence Preservation Demand.pdf>



## Notice of Attached Legal Notices

**Jeromy Wilson** <djjiik2015@gmail.com>    Tue, Jan 27, 2026 at 7:46 PM
To: Chelsea Suarez <chelsea@chelseasuarez.com>

Thank you. Receipt is noted.

*Jeromy Wilson*
*Omaha, Nebraska 68111*

📞 *(402) 415-9016*

   *djjiik2015@gmail.com*